***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

Electronically Filed
Supreme Court
SCWC-12-0000858
25-NOV-2015
08:37 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

YONG SHIK WON,
Petitioner/Defendant-Appellant.

SCWC-12-0000858

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000858; CASE NO. 1DTA-11-01903)

NOVEMBER 25, 2015

McKENNA AND POLLACK, JJ., WITH WILSON, J., CONCURRING
SEPARATELY, AND NAKAYAMA, J., DISSENTING,
WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY POLLACK, J.

Under our law, a person has a statutory and

constitutional right to refuse to consent to a bodily search

unless an exception to the search warrant requirement is

present.  In this case, the defendant was informed by the police

of his right to refuse to consent to a search, but he was also

told that if he exercised that right, his refusal to consent would be a crime for which he could be imprisoned for up to thirty days.

Yong Shik Won was stopped by police while driving his vehicle on April 20, 2011. After his arrest for operating his vehicle under the influence of an intoxicant, Won was given a choice. He could either submit to a test for the purpose of determining alcohol concentration, or if he did not submit, he would be arrested, prosecuted, and subject to thirty days of imprisonment for the crime of refusal to submit to a breath, blood, or urine test. After being given this choice, Won elected to undergo a breath test, the result of which provided the basis for Won's conviction for the offense of operating a vehicle under the influence of an intoxicant.

We consider whether Won's election to submit to the breath test was consensual under the circumstances presented. We hold that it was not.

## I. Introduction

The prohibition against operating a vehicle under the influence of an intoxicant (OVUII) provides that all drivers are deemed to have given consent to submit to a test of their breath, blood, or urine, for the purpose of determining alcohol

concentration or drug content.[1]  Hawaiʻi Revised Statutes (HRS)

§ 291E-11(a) (Supp. 2006).  Before administering a test, the

officer must inform the person that "the person may refuse to

submit to testing."  Id.

If a person arrested for OVUII refuses to submit to a

test to determine blood alcohol concentration (BAC test), the

law provides that "none shall be given," HRS §§ 291E-15 (Supp.

2010)[2] and 291E-65 (Supp. 2009),[3] except in circumstances

---

[1]     The relevant portions of the "Implied consent of operator of
vehicle to submit to testing to determine alcohol concentration and drug
content" section provides as follows:

> (a)    Any person who operates a vehicle upon a public way,
>        street, road, or highway or on or in the waters of
>        the State shall be deemed to have given consent,
>        subject to this part, to a test or tests approved by
>        the director of health of the person's breath, blood,
>        or urine for the purpose of determining alcohol
>        concentration or drug content of the person's breath,
>        blood, or urine, as applicable.
>
> (b)    The test or tests shall be administered at the
>        request of a law enforcement officer having probable
>        cause to believe the person operating a vehicle . . .
>        is under the influence of an intoxicant . . . only
>        after:
>
>        (1)   A lawful arrest; and
>
>        (2)   The person has been informed by a law
>              enforcement officer that the person may refuse
>              to submit to testing under this chapter.

Hawaiʻi Revised Statutes § 291E-11 (Supp. 2006).

[2]     HRS § 291E-15 provides:

> If a person under arrest refuses to submit to a breath,
> blood, or urine test, none shall be given, except as
> provided in section 291E-21. Upon the law enforcement
> officer's determination that the person under arrest has
> refused to submit to a breath, blood, or urine test, if
> applicable, then a law enforcement officer shall:

(continued. . .)

involving a "collision resulting in injury to or the death of any person."  HRS § 291E-21(a) (2007).[4]

Hawai'i law provides two categories of penalties for drivers that refuse to submit to a BAC test.[5]  The first is an extended revocation period of the person's driver's license in an administrative process applicable to all persons arrested for OVUII.  HRS § 291E-41(d) (Supp. 2010); see generally HRS Chapter

---

(. . .continued)
> (1) Inform the person under arrest of the sanctions under section 291E-41, 291E-65, or 291E-68; and
>
> (2) Ask the person if the person still refuses to submit to a breath, blood, or urine test, thereby subjecting the person to the procedures and sanctions under part III or section 291E-65, as applicable;
>
> provided that if the law enforcement officer fails to comply with paragraphs (1) and (2), the person shall not be subject to the refusal sanctions under part III or IV.

(Emphasis added).

[3]  HRS § 291E-65 provides, in relevant part:

> If a person under arrest for operating a vehicle after consuming a measurable amount of alcohol, pursuant to section 291E-64, refuses to submit to a breath or blood test, none shall be given, except as provided in section 291E-21 . . . .

(Emphasis added).

[4]  HRS § 291E-21(a) provides:

> Nothing in this part shall be construed to prevent a law enforcement officer from obtaining a sample of breath, blood, or urine, from the operator of any vehicle involved in a collision resulting in injury to or the death of any person, as evidence that the operator was under the influence of an intoxicant.

[5]  The two areas of sanctions provided for refusal to submit to a BAC test are separate from the criminal prosecution prescribed for the OVUII offense.

291E, Part III.  The administrative license revocation process is "civil in nature."  State v. Severino, 56 Haw. 378, 380, 537 P.2d 1187, 1189 (1975).  This court has upheld civil license revocation on several occasions.  See, e.g., Dunaway v. Admin. Dir. of Courts, 108 Hawai'i 78, 87, 117 P.3d 109, 118 (2005); Kernan v. Tanaka, 75 Haw. 1, 22, 856 P.2d 1207, 1218 (1993); Severino, 56 Haw. at 380-81, 537 P.2d at 1189.  The civil revocation of driver's licenses under HRS Chapter 291E, Part III, is not an issue in this case.

In contrast, the second category of penalties for refusing to submit to a BAC test is a criminal sanction. "Except as provided in section 291E-65, refusal to submit to a breath, blood, or urine test as required by part II is a petty misdemeanor."[6]  HRS § 291E-68 (Supp. 2010).  A petty misdemeanor is punishable by up to thirty days in jail,[7] a fine not exceeding $1,000,[8] and imposition of community service and payment of other assessments and fees.[9]

---

[6]    The criminal sanction became effective on January 1, 2011.  2010 Haw. Sess. Laws Act 166, § 26 at 415.

[7]    "A crime is a petty misdemeanor if it is so designated in this Code or in a statute other than this Code enacted subsequent thereto, or if it is defined by a statute other than this Code that provides that persons convicted thereof may be sentenced to imprisonment for a term not to exceed thirty days."  HRS § 701-107(4) (Supp. 2005).

[8]    HRS § 706-640(1)(e).

[9]    HRS § 706-605(1)(d), (6).

## II.  Arrest and proceedings through trial

During the early morning hours of April 20, 2011, Won was observed driving at a high rate of speed by an officer of the Honolulu Police Department (HPD).  After pulling Won over, the officer detected the odor of alcohol on Won's breath and observed that Won's eyes were "red" and "watery."  Based on this information, the officer concluded that Won was likely intoxicated.  A standard field sobriety test and preliminary alcohol screen test were administered, both of which Won failed.  Won was arrested for OVUII in violation of HRS § 291E-61(a)(3) and transported by police to the local police station.[10]

At the police station, an officer read to Won a form entitled "Use of Intoxicants While Operating a Vehicle Implied Consent for Testing" (Implied Consent Form).[11]  Of foremost relevance to this case, the Implied Consent Form informs arrested persons of certain information, in three sections.

---

[10]  HRS § 291E-61(a)(3) (Supp. 2010) provides:

> (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> . . .
>
> (3) With .08 or more grams of alcohol per two hundred ten liters of breath . . . .

[11]  The police report apparently refers to the Implied Consent Form as the "ADLRO form," as the report notes, "I read Won the ADRLO form.  He elected the breath test."  The Implied Consent Form is identified as "HPD-396K (R-01/11)" at the bottom left of the form.

> **Pursuant to chapter 291E, Hawaii Revised Statutes (HRS), Use of Intoxicants While Operating a Vehicle, you are being informed of the following:**
>
> 1.____ Any person who operates a vehicle upon a public way, street, road, or highway or on or in the waters of the State shall be deemed to have given consent to a test or tests for the purpose of determining alcohol concentration or drug content of the persons breath, blood or urine as applicable.
>
> 2.____ You are not entitled to an attorney before you submit to any tests [sic] or tests to determine your alcohol and/or drug content.
>
> 3.____ You may refuse to submit to a breath or blood test, or both for the purpose of determining alcohol concentration and/or blood or urine test, or both for the purpose of determining drug content, none shall be given [sic], except as provided in section 291E-21. <u>However, if you refuse to submit to a breath, blood, or urine test, you shall be subject to up to thirty days imprisonment and/or fine up to $1,000 or the sanctions of 291E-65, if applicable.</u> In addition, you shall also be subject to the procedures and sanctions under chapter 291E, part III.[12]

(Emphasis added). Thus, the Implied Consent Form has three principal provisions: an informational section, a denial of the right to counsel section, and a refusal to submit section.

The Implied Consent Form includes space so that the person can initial each section to indicate acknowledgement. Won initialed both the refusal to submit section, which informed him that refusing to submit to the BAC test is punishable by up to thirty days of imprisonment and a fine of up to $1000, and the informational section. He did not initial the denial of the

---

[12] HRS § 291E-65 applies to a person under the age of twenty-one at the time of the offense. HRS Chapter 291E, Part III addresses the administrative revocation process which provides for suspension of the person's license and privilege to operate a vehicle.

right to counsel section.[13] The Implied Consent Form separately has space for the person to indicate which BAC test--breath, blood, or urine--the person has agreed or refused to submit and also contains space for both the person and the officer administering the Implied Consent Form to sign. Won initialed next to "AGREED TO TAKE A BREATH TEST AND REFUSED THE BLOOD TEST" and signed the form with his name at the bottom.

A breath test was performed on Won using an Intoxilyzer 8000. Won's BAC was 0.17 grams of alcohol per two hundred ten liters of breath, which is above the limit of 0.08 grams of alcohol per 210 liters of breath under which a person may legally operate a vehicle. See HRS § 291E-61(a)(3). Won was charged in the District Court of the First Circuit (district court) in an amended complaint with OVUII, in violation of HRS § 291E-61(a)(3) and HRS § 291E-61(b)(1), as a first offense.[14]

---

[13] Handwritten notes under the right to counsel section state, "said he does not agree with this one, and was not going to initial."

[14] The original complaint charged Won with violation of HRS "§ 291E-61(a)(1) and or (a)(3)." Won filed a motion to dismiss the original complaint for failure to allege the requisite mens rea. Subsequent to Won's motion but prior to the district court's ruling on it, this court issued State v. Nesmith, 127 Hawai'i 48, 276 P.3d 617 (2012), which held that mens rea must be included in a complaint alleging violation of HRS § 291E-61(a)(1) but that it need not be alleged in a charge under HRS § 291E-61(a)(3).

The district court denied the motion to dismiss and granted the State's motion to amend the complaint. The amended complaint included the requisite mens rea for the HRS § 291E-61(a)(1) charge. At trial, Won orally moved the court to reconsider its decision denying the dismissal of the HRS § 291E-61(a)(1) charge. The State did not object to the dismissal of the HRS § 291E-61(a)(1) charge, and the court granted the motion.

Won filed a "Motion to suppress statements and evidence of [Won's] breath or blood test" (Motion). The following grounds were asserted for suppression of the BAC test: (1) Won was misled and inadequately advised as to his rights "surrounding the chemical test, in violation of not only existing Hawai'i appellate precedent but also his Due Process rights"; (2) Won's constitutional right to be adequately apprised of his rights was violated; (3) Won was deprived of an attorney in violation of HRS § 803-9;[15] and (4) Won "was presented with a Hobson's Choice, either remain silent or commit a crime."

The State disputed each of Won's arguments, stating in response that (1) Won was adequately advised in regard to his rights prior to the breath test, (2) the breath test did not implicate a right to be advised of one's constitutional rights, (3) the breath test did not implicate a Sixth Amendment right to

_____

[15] In relevant part, the statutory right to an attorney provides:

It shall be unlawful in any case of arrest for examination:

(1) To deny to the person so arrested the right of seeing . . . counsel . . . ;

(2) To unreasonably refuse or fail to make a reasonable effort . . . to send a . . . message . . . to the counsel . . . ;

(3) To deny to counsel . . . the right to see or otherwise communicate with the arrested person at the place of the arrested person's detention . . . .

HRS § 803-9 (1993).

- 9 -

counsel, and (4) the breath test did not implicate a statutory right to counsel under HRS § 803-9.

On September 20, 2012, the district court heard Won's Motion.[16]  The district court denied the Motion without making specific findings of fact or conclusions of law, and the case immediately proceeded to trial.  The parties stipulated into evidence the facts as set forth above, as well as that the intoxilyzer result was accurate.  Based on the stipulated facts, the district court found Won guilty of violating OVUII, HRS § 291E-61(a)(3).[17]  Following conviction, Won's sentence was stayed pending appeal of the judgment of conviction.  Won timely appealed the judgment to the Intermediate Court of Appeals (ICA).

### III.    Appellate Proceedings

While this case was pending before the ICA, the Supreme Court of the United States decided Missouri v. McNeely, 133 S. Ct. 1552 (2013).  In that case, the Supreme Court held that the natural metabolization of alcohol in the bloodstream does not present a per se exigency that qualifies as an

---

[16]    The Honorable David W. Lo presided.

[17]    The judgment of conviction indicates that Won violated "HRS [§] 291E-61(a)(1)(3)(b)(1)."  However, as noted supra, the (a)(1) portion of the charge was dismissed, and the State proceeded to trial only on the (a)(3) portion of the charge.  An amended judgment of conviction was subsequently filed reflecting "HRS [§] 291E-61(a)(3)(b)(1)" presumably pursuant to a directive included in the Judgment on Appeal issued by the Intermediate Court of Appeals.

exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases.  Id. at 1556.  Won argued that McNeely requires nonconsensual blood or breath alcohol tests be justified by exigent circumstances or other exceptions to the warrant requirement in order to comport with the Fourth Amendment.  Thus, Won asserted that the State must demonstrate that he consented to the breath test freely and voluntarily, a burden he claims the State failed to discharge because his exercise of the statutory and constitutional right to refuse consent was criminalized.  That is, according to Won, his consent was coerced out of him by the threat of criminal prosecution and penalties.

Relatedly, Won reasoned that the "claim and exercise of a constitutional right cannot . . . be converted into a crime."  "Under Hawaii's current implied consent laws, a person must consent to an alcohol concentration test or face criminal prosecution"; thus, according to Won, "HRS § 291E-68 is unconstitutional on its face and as applied."

In response, the State construed the principle articulated by McNeely as "blood draws for alcohol concentration testing did not justify a per se exigent circumstances exception to the search warrant requirement."  The State submitted that it is an "overly expansive reading" of McNeely's holding to suggest that a police officer cannot "coerce an OVUII arrestee to submit

to a breath or blood test" by means other than force. Specifically, according to the State, if it can forcibly compel OVUII testing by acquiring a valid search warrant, the State could similarly coerce OVUII arrestees by employing less physically intrusive methods like criminal penalties.

## A.    Decision of the ICA

The ICA described the Supreme Court's decision in McNeely as "address[ing] the narrow question of whether the dissipation of alcohol in the bloodstream establishes a per se exigent-circumstances exception to the warrant requirement for nonconsensual blood draws for OVUII arrests." State v. Won, 134 Hawai'i 59, 77, 332 P.3d 661, 679 (App. 2014). According to the ICA's reading of McNeely, it did not involve "other potential exceptions to the warrant requirement, the Fourth Amendment implications of breath tests, the validity of implied consent statutes, or the validity of breath tests conducted pursuant to such statutes." Id. Hence, the ICA distinguished McNeely from this case because "Won agreed to submit to a breath test pursuant to Hawaii's implied consent statute," and he "was not subjected to a compelled nonconsensual blood draw." Id.

In upholding Won's BAC test and the statutory scheme imposing sanctions for withdrawing consent, the ICA relied on a balancing analysis through which it was found that the search was reasonable due to its minimal invasiveness and the

- 12 -

overriding governmental interest in preventing OVUII violations. The ICA declared, citing Maryland v. King, 133 S. Ct. 1958, 1969 (2013), that "the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" Won, 134 Hawai'i at 77, 332 P.3d at 679. The ICA referenced a Hawai'i appellate decision involving a search of a student at a school and stated, "In determining whether a warrantless search or seizure is reasonable, the court must balance the government's need to search against the intrusion on the individual's privacy-interests."[18] Id. at 78, 332 P.3d at 680 (In re Doe, 77 Hawai'i 435, 444, 887 P.2d 645, 654 (1994)).

The ICA also held that because "driving is a privilege, not a right," id. at 78, 332 P.3d at 680, "[a]s a matter of law, a person who exercises the privilege to drive and operates a vehicle on a public road is deemed to have given his or her consent to submit to testing of the person's breath, blood, or urine for alcohol or drugs." Id. The ICA theorized that "[t]he Legislature presumably could have sought to make the implied consent to breath testing completely irrevocable." Id. Thus, the ICA concluded that the statutory right to refuse to submit to testing does not take precedence over the driver's implied consent to testing. The ICA similarly held that the

---

[18]     See infra note 37.

implied consent to testing is not rendered invalid by rights provided by the Hawaiʻi Constitution. As stated by the ICA, the statutory implied consent prevails over the statutory right to refuse to submit to testing and is not invalidated by article I, section 7 rights. Consequently, while the ICA recognized a "limited statutory right" to refuse a BAC test, it held that this limited right cannot invalidate the consent deemed by statute.

Finally, the ICA found that the statutory implied consent could not be withdrawn, reasoning that "the purpose of the implied consent statute would be defeated if a driver could freely withdraw his or her consent to submit to a breath test after being arrested for OVUII." Id. at 79, 332 P.3d at 681. Accordingly, the ICA affirmed Won's conviction and sentence.[19] Id. at 80, 332 P.3d at 682. Won timely filed an application for writ of certiorari seeking review of the ICA's judgment, which this Court accepted.

---

[19] Additionally, the ICA held as follows: (a) McNeely did not render HRS § 291E-68 unconstitutional, Won, 134 Hawaiʻi at 80, 332 P.3d at 682; (b) the administration of the Implied Consent Form was not an interrogation and, thus, there was no requirement to advise Won of his constitutional rights, id. at 73, 332 P.3d at 675; (c) the administration of the Implied Consent Form does not confer a right to an attorney under HRS § 803-9, id. at 74, 332 P.3d at 676; and (d) the Implied Consent Form was not inaccurate or misleading, id. at 75–76, 332 P.3d at 677–78, thus rejecting Won's arguments.

## B.    Arguments on Certiorari

Won argues that the BAC evidence in this case was obtained in an unconstitutional manner and should have been suppressed because no exception to the warrant requirement was applicable under the circumstances.  He contends that the search incident to arrest exception and the special law enforcement needs exception to the warrant requirement are not applicable in this case.

Won also asserts that the Implied Consent Form's statement that a person "'shall' be subject to 30 days jail unless he consented" is coercive and precludes a finding of voluntary consent under article I, section 7 and the Fourth Amendment.  According to Won, "[t]here is no Implied Consent exception to the warrant requirement," which means that even if law enforcement officers comply with the State's implied consent statute, it would not validate a warrantless BAC test in impaired driving cases.[20]

---

[20]    Won's Application was supported by two briefs of amici curiae. The National College for DUI Defense, Inc. argued that the criminal sanctions of HRS § 291E-68 were an unconstitutional infringement on the Fourth Amendment, and assuming the criminal sanctions were constitutional, those sanctions entitled Won to be advised of his Fifth and Sixth Amendment rights before consenting.  The Hawai'i Association of Criminal Defense Lawyers argued that the administration of the Implied Consent Form implicated Won's right to counsel under both article I, section 5 of the Hawai'i Constitution and HRS § 803-9, and the violation of Won's right to counsel required suppression of the results of the breath test.

The State, on the other hand, submits that "under the totality of the circumstances rule[,] . . . Won's consent to provide a breath sample was given freely and voluntarily." Although the State acknowledged that Won was not permitted to consult an attorney, the State emphasizes that "[t]he police officers followed the proper procedures, there is nothing in the record to indicate that Won's will was overborne . . . , and he was informed by the Implied Consent Form that he could refuse to provide a breath or blood sample." The State's position is that it is not against the Constitution "for the [S]tate to enforce the implied consent bargain by providing for a fine or jail time for those drivers who chose to renege on their side of the bargain by refusing to provide a breath or a blood sample when it has been determined that they are OVUII."[21]

## IV. Discussion

### A. A breath test is a search subject to constitutional constraints

"An invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" Missouri v. McNeely, 133 S. Ct. 1552, 1558 (2013)

---

[21] The State's position was also supported by amicus curiae briefs from the Attorney General of the State of Hawai'i (AG). The AG argued that the breath test does not implicate a requirement to inform arrestees of their constitutional rights. The AG further argued that the holding of McNeely applied only to blood tests and that Won's breath test was excepted from the requirements of a warrant by the exigency, search incident to arrest, and special law enforcement needs exceptions.

(quoting Winston v. Lee, 470 U.S. 753, 760 (1985)).  The Supreme Court has "never retreated . . . from [its] recognition that any compelled intrusion into the human body implicates significant, constitutionally protected privacy interests."  Id. at 1565.

Skinner v. Railway Labor Executives Ass'n, 489 U.S. 602 (1989), defines a breath test as a search.

> In light of our society's concern for the security of one's person, . . . it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable. . . .
>
> Subjecting a person to a breathalyzer test, which generally requires the production of alveolar or "deep lung" breath for chemical analysis . . . implicates similar concerns about bodily integrity and, like the blood-alcohol test . . . , should also be deemed a search.

Id. at 616-17 (emphases and paragraph break added).  Thus, production of deep lung breath is a search under well-settled law.[22]

---

[22]    The Supreme Court eliminated any implication in its prior case law that warrantless BAC testing is permissible without regard to the circumstances.  McNeely, 133 S. Ct. at 1560.  McNeely revisited Schmerber to make it clear that the warrantless BAC search was permissible under the exigency exception to the warrant requirement.

> Thus, our analysis in Schmerber fits comfortably within [Supreme Court] case law applying the exigent circumstances exception.  In finding the warrantless blood test reasonable in Schmerber, we considered all of the facts and circumstances of the particular case and carefully based our holding on those specific facts.

McNeely, 133 S. Ct. at 1560.  Thus, McNeely overruled any reading of Schmerber that may have indicated that an individual may be forced to submit to a warrantless BAC test when no exception to the warrant requirement is present.

    Further, although the BAC test in McNeely was a blood test, McNeely, 133 S. Ct. at 1558, the Supreme Court has applied McNeely to a case
                                                        (continued. . .)

The right to be free of warrantless searches and seizures is a fundamental guarantee of our constitution.

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

Haw. Const. art. I, § 7. "We have repeatedly recognized that, if anything is settled in the law of search and seizure, it is that a search without a warrant issued upon probable cause is unreasonable per se." State v. Ganal, 81 Hawai'i 358, 368, 917 P.2d 370, 380 (1996).

As early as 1922, this court expressed protection of such constitutional rights in terms of personal autonomy:

> [I]t would not be possible to add to the emphasis with which the Supreme Court . . . has declared the importance of keeping unimpaired the rights secured to the people by [the Fourth and Fifth Amendments to the U.S. Constitution]. . . . [I]t is said that such rights are indispensable to the full enjoyment of personal security, personal liberty and private property.

Territory v. Ho Me, 26 Haw. 331, 335 (Haw. Terr. 1922) (emphasis added) (ruling as inadmissible contraband that was seized by an officer after requiring a defendant to open his residence to a search). Accordingly, this court has cast the constitutional right to be free of "unreasonable searches, seizures and

_____

(. . .continued)
involving other forms of BAC testing. See Brooks v. Minnesota, 133 S. Ct. 1996 (2013) (reversing case regarding blood and urine BAC tests "for further consideration in light of [McNeely]").

invasions of privacy" in the light of "the important fourth amendment values of individual dignity and integrity of the person."  State v. Kaluna, 55 Haw. 361, 366, 520 P.2d 51, 57 (1974).

These fundamental values are ensured preservation by the Hawai'i Constitution: "The integrity of one's person-- including the right to be free of arbitrary probing by government officials . . . is at least as significant in terms of human dignity as the right to be free of externally imposed confinement."  Kaluna, 55 Haw. at 366, 370-71, 520 P.2d at 57, 59-60.  Thus, the proscription against "unreasonable searches, seizures and invasions of privacy" in the Hawai'i Constitution draws individual dignity and personal autonomy within its protections.

We have also recognized that "the warrant requirement is subject to a few specifically established and well-delineated exceptions."  Ganal, 81 Hawai'i at 368, 917 P.2d at 380.  One of the specific exceptions is a search conducted pursuant to consent.[23]  Id.  The district court rejected Won's arguments

_____

[23]     No exception to the warrant requirement based on exigency can be gleaned from the facts and circumstances of this case.  See State v. Clark, 65 Haw. 488, 494, 654 P.2d 355, 360 (1982) (generally defining an exigency as "when the demands of the occasion reasonably call for an immediate police response").  Nor has the State argued that an exigency is present.  Further, an exigency is not sufficient to validate a warrantless search in this case because a legislature may not establish a per se exigency by statute. McNeely, 133 S. Ct. at 1560.

(continued. . .)

related to consent, and Won challenged the validity of his "consent" both to the ICA and this court.  In rejecting Won's challenge, the ICA based its balancing analysis, in part, on its determinations that a driver has impliedly consented to submission to testing, id. at 78, 332 P.3d at 680; the

---

(. . .continued)
The AG has argued that the special law enforcement needs exception applies.  However, where the purpose of the search is to generate evidence for law enforcement purposes, it does not fall within that exception as defined by the Supreme Court.  See City of Indianapolis v. Edmond, 531 U.S. 32, 41-42 (2000) (where "the primary purpose of the . . . program is to uncover evidence of ordinary criminal wrongdoing, the program contravenes the Fourth Amendment"); Ferguson v. City of Charleston, 532 U.S. 67, 84 (2001) ("Such an approach is inconsistent with the Fourth Amendment."); see also William E. Ringle, Searches and Seizures, Arrests and Confessions § 10:13 (2d. ed.) ("Under the special needs doctrine, exceptions to the warrant requirement are permitted . . . . when police are engaged in activities unrelated to crime-solving."); Wayne R. LaFave, 3 Search & Seizure: A Treatise on the Fourth Amendment § 5.4(c) (5th ed.).

It is manifest that the purpose of the BAC test administered to Won was to gather evidence for criminal prosecution and, in fact, was so used.  The State has not asserted that the purpose of the BAC test was for a purpose other than to gather evidence for a criminal prosecution.

This court has not been called upon to determine whether the Hawai'i Constitution recognizes a "special law enforcement needs" exception to the warrant requirement.  In light of the fact that the search in this case was for the purpose of collecting evidence for a criminal prosecution, we conclude that under the Supreme Court's definition, the special needs exception is not applicable to the circumstances of this case, and thus it is unnecessary to address whether a "special law enforcement needs" exception to the warrant requirement is in accordance with the Hawai'i Constitution.

The search incident to arrest exception is also inapplicable as it is "limited in scope to a search of the arrestee's person and the area within his immediate control from which he could obtain a weapon or destroy evidence."  State v. Paahana, 66 Haw. 499, 506, 666 P.2d 592, 597) (internal quotation mark omitted).  "[T]he exception for searches incident to a lawful arrest 'implies the exigent circumstances of imminent danger to the arresting officer or others and of imminent concealment or destruction of evidence or the fruits of the crime from the circumstances of a lawful arrest.'"  Id. (quoting State v. Clark, 65 Haw. 488, 496, 654 P.2d 355, 361 (1982)).  As noted, McNeely held that the natural metabolization of alcohol does not qualify as a per se exigency, and the record indicates no other exigency that necessitated the breath test.

legislature could have made that consent irrevocable, id.; and the purpose of the implied consent statute would be defeated if a driver could freely withdraw his or her consent, id. at 79, 332 P.3d at 681.  We examine the doctrine of consent: first generally and then as applied to the facts of this case.

**B.    The consent exception to the warrant requirement**

Consent to be searched is a waiver of one's right not to be searched.  Nakamoto v. Fasi, 64 Haw. 17, 21, 635 P.2d 946, 951 (1981).  Thus, in the context of a request by police to submit to a BAC test, consent and waiver have the same result.  This court has repeatedly recognized that an individual has a constitutional right to refuse consent to a search when consent is requested by the State.  State v. Kearns, 75 Haw. 558, 570, 867 P.2d 903, 909 (1994).[24]

"Consent" in the constitutional sense means more than the absence of an objection on the part of the person to be searched; it must be shown that such consent was voluntarily given.  State v. Bonnell, 75 Haw. 124, 147-48, 856 P.2d 1265,

---

[24]    Accord State v. Quino, 74 Haw. 161, 174, 840 P.2d 358, 364 (1992); Nakamoto, 64 Haw. at 21, 635 P.2d at 951; State v. Patterson, 58 Haw. 462, 470, 571 P.2d 745, 750 (1977); State v. Price, 55 Haw. 442, 443, 521 P.2d 376, 377 (1974); see also Trainor, 83 Hawai'i at 255, 925 P.2d at 823; Ganal, 81 Hawai'i at 370, 917 P.2d at 382; Bonnell, 75 Haw. at 147-48, 856 P.2d at 1277; State v. Russo, 67 Haw. 126, 137, 681 P.2d 553, 562 (1984); State v. Merjil, 65 Haw. 601, 605, 655 P.2d 864, 868 (1982); Kaluna, 55 Haw. at 371 n.7, 520 P.2d at 60 n.7.  The right to refuse consent to a search is, of course, superseded by a warrant or an exception to the warrant requirement.

1277 (1993). Voluntariness means a "free and unconstrained choice." State v. Shon, 47 Haw. 158, 166, 385 P.2d 830, 836 (1963) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973)); accord State v. Trainor, 83 Hawai'i at 261, 925 P.2d 829; State v. Ramones, 69 Haw. 398, 405, 744 P.2d 514, 517 (1987).

In Hawai'i, consent is measured under an analysis examining the totality of the circumstances. Ganal, 81 Hawai'i at 368, 917 P.2d at 380.

> Whether consent to a search was freely and voluntarily given, as in a case where custodial interrogation may be implicated, must be determined from the totality of circumstances surrounding the defendant's purported relinquishment of a right to be free of unreasonable searches and seizures.

State v. Russo, 67 Haw. 126, 137, 681 P.2d 553, 562 (1984) (emphasis added). Additionally, it is well settled "that when the prosecution seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving by the preponderance of the evidence that the consent was, in fact, freely and voluntarily given." State v. Patterson, 58 Haw. 462, 468, 571 P.2d 745, 749 (1977).

The question of whether the facts as found amount to legally adequate "consent" is a question of constitutional law that a court answers by exercising its "own independent constitutional judgment based on the facts of the case." Trainor, 83 Hawai'i at 255, 925 P.2d at 823 (quoting State v.

Lee, 83 Hawai'i 267, 273, 925 P.2d 1091, 1097 (1996)). This is because there is "no talismanic definition of 'voluntariness,' mechanically applicable to the host of situations where the question has arisen." Trainor, 83 Hawai'i at 261, 925 P.2d at 829 (quoting Schneckloth, 412 U.S. at 224).

"In other words, application of constitutional principles to the facts as found requires [a court] to 'examine the entire record and make an independent determination of the ultimate issue of voluntariness based upon that review and the totality of the circumstances.'" Id. (alteration omitted) (quoting State v. Kelekolio, 74 Haw. 479, 502, 849 P.2d 58, 69 (1993)). Therefore, the ultimate issue of whether the defendant provided "consent" is reviewed de novo. Id.

### 1. Consent may not be coerced

This court has stated unambiguously that for consent to be "in fact, freely and voluntarily given," the consent "must be uncoerced." Nakamoto, 64 Haw. at 21, 635 P.2d at 951 (emphasis added). Thus, consent may not be gained by explicit or implicit coercion, implied threat, or covert force. State v. Price, 55 Haw. 442, 443, 521 P.2d 376, 377 (1974).[25] While coercion may be indicated where a person's "will has been overborne," Shon, 47 Haw. at 166, 385 P.2d at 836, ultimately,

---

[25] Accord Trainor, 83 Hawai'i at 261, 925 P.2d at 829; Ganal, 81 Haw. at 368, 917 P.2d at 380; Patterson, 58 Haw. at 468, 571 P.2d at 749.

this court "equate[s] voluntary with uncoerced." Price, 55 Haw. at 443, 521 P.2d at 377. "For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified . . . intrusion against which the fourth amendment is directed." Trainor, 83 Hawai'i at 261, 925 P.2d at 829 (quoting Schneckloth, 412 U.S. at 228).

Thus, under circumstances where coercion is present, a search dependent upon consent for legitimacy violates the constitutional proscription of article I, section 7 and offends the values of individual dignity and personal autonomy that it protects.

Accordingly, searches alleged by the State to be consensual are subject to "the most careful scrutiny" because neglect of such an examination "would sanction the possibility of . . . coercion," Trainor, 83 Haw. at 262, 925 P.2d at 830, which this court has unstintingly protected against. This court has concluded that the contamination of coercion extends even to coercion by private actors: "although no state action is involved where an accused is coerced into making a confession by a private individual, we find that the state participates in that violation by allowing the coerced statements to be used as evidence." State v. Bowe, 77 Hawai'i 51, 59, 881 P.2d 538, 546 (1994).

Our decisions demonstrate that the totality of the circumstances may indicate that an alleged waiver of a constitutional right was not voluntary even when there is a manifestation of assent by the defendant. For instance, mere acquiescence "in and of itself, is insufficient to establish consent." Kearns, 75 Haw. at 571, 867 P.2d at 909; accord Trainor, 83 Hawai'i at 260, 925 P.2d at 828; State v. Quino, 74 Haw. 161, 175, 840 P.2d 358, 364 (1992); Nakamoto, 64 Haw. at 22, 635 P.2d at 951; Kaluna, 55 Haw. at 371, n.7 520 P.2d at 60 n.7.

Verbal expression also may not be determinative of whether submission to a search is voluntary when the totality of circumstances surrounding the purported waiver is implicitly or subtly coercive. Russo, 67 Haw. at 137, 681 P.2d at 562. In Russo, despite the fact that the defendant stated "I gave you verbal consent" in response to the police request to search, the court stated that "[w]hile assent could be inferred from these words, the context in which they were uttered leads us to believe they did not represent an essentially free and unrestrained choice." 67 Haw. at 138, 681 P.2d at 562; see also Trainor, 83 Hawai'i at 253, 925 P.2d at 821 (finding submission to a search was nonconsensual despite defendant's statement of "Okay" and opening his arms in response to police request for a pat down); State v. Pau'u, 72 Haw. 505, 508, 824 P.2d 833, 835

(1992) (finding submission to a search was nonconsensual despite defendant's assent); State v. Merjil, 65 Haw. 601, 606, 655 P.2d 864, 868 (1982) (finding that "consent for [the search] was . . . given under duress").

In Nakamoto, we considered whether a search by a security guard of a bag of a concert attendee was consensual. Nakamoto, 64 Haw. at 19, 635 P.2d at 949. The court distinguished between not being informed of the right to refuse consent and the person's belief that he or she had no right to refuse. The court first noted that

> while there is no requirement that the person searched be first informed of his right to refuse consent to the search, the fact that he was not so advised is nevertheless a factor to be considered in evaluating the totality of the circumstances as they bear upon the question of whether such consent was freely and voluntarily given.

Id. at 21, 635 P.2d at 951. Thus, although the constitution does not require that individuals be expressly informed of their right to refuse a search, whether they were so informed remains a relevant factor in a determination of whether consent was, in fact, free and voluntary under the totality of the circumstances. Further,

> when it is clear that the search will be conducted regardless of the consent of the party searched, there can be no voluntary waiver of his right to be free from unreasonable searches and seizures. So that even where he is asked directly whether he objects to the search, there must be at least some intimation that his objection would be meaningful or that the search is subject to his consent.

Id. (emphasis added) (citations omitted). Thus, the process by which the consent to search is obtained must be meaningful and substantive; the request by the State that an individual waive the protections of the constitution must be more than a mere formality. See Price, 55 Haw. at 444, 521 P.2d at 377 ("[W]hen the accused is directly asked whether he objects to the search, there must be at least some suggestion that his objection is significant or that the search waits upon his consent."); Pau'u, 72 Haw. at 511, 824 P.2d at 836 (holding that a search was invalid where the defendant "felt the futility of withholding any consent or confession").

After examining the totality of the circumstances of the plaintiff's case, the Nakamoto court concluded that

> [the plaintiff] was not informed by the guard that she had the right to refuse the inspection. She simply assumed that the security guard was acting under an ordinance, statute, or regulation authorizing the inspection. So that while she was unwilling to submit to the inspection of her personal effects, she believed that she had no other alternative but to comply . . . .
>
> In these circumstances, there was no valid consent to the inspection of her handbag by the security officer. She was not aware of her right to object and she reasonably believed that she had no other alternative but to submit. Consent given in the belief that one would forfeit her right to attend the concert, if she refused to be searched, is an inherent product of coercion and will not validate an otherwise improper intrusion.

Nakamoto, 64 Haw. at 22, 635 P.2d at 951 (emphases and paragraph break added). Therefore, although it is not necessary to inform a person of his or her right to refuse consent, if the person submits to the search under the belief that the search will

occur regardless of an objection to the search or the person reasonably believed that there was no other alternative to prevent forfeiture of a right, that consent is coerced.

In Trainor, this court considered, inter alia, whether a pat-down search was consensual when a defendant contested his arrest and search following a "walk and talk investigation" at the Honolulu Airport.  83 Hawai'i at 252, 925 P.2d at 820.  At the outset of the "encounter," it was "represented" to the defendant that "he was not under arrest and was free to leave at any time."  Id. at 253, 925 P.2d at 821.  After concluding that the encounter was an investigative seizure of the defendant notwithstanding the representation that he was free to leave, id. at 256, 925 P.2d at 824, the court also considered whether the encounter and the subsequent pat down of the defendant's person could nonetheless be considered consensual considering that the defendant did not leave the encounter and verbally assented to the search.  Id. at 260, 925 P.2d at 828.

This court held that the investigative encounter could be deemed "consensual" only if, prior to the start of questioning, the person was informed of the right to decline to participate in the encounter and of the right to leave at any time and thereafter, the person voluntarily participated in the encounter.  Id. at 260, 925 P.2d at 828.

> [T]he determination as to whether the person consented to the questioning is a subjective one. <u>By its very nature, however, the subjective component of the inquiry regarding consent cannot be a matter of whether the seized person has been informed that he or she has the right to decline to participate in the encounter and is free to leave at any time.</u> After all, the person either has or has not been so informed. Accordingly, the subjectivity of the "consent" determination springs by definition from the question whether, <u>after being given the prerequisite advice by the police, the person voluntarily participates in the encounter</u>.

<u>Id.</u> at 260-61, 925 P.2d at 828-29 (emphases added) (alterations and internal quotation marks omitted) (quoting <u>Kearns</u>, 75 Haw. at 573-74, 867 P.2d at 910 (Levinson, J., concurring)).

Therefore, based on the distinction between the notification of the right to decline and the subjective component of "consent," a court is required to resolve whether the circumstances demonstrate that the submission was consensual. "[E]ven if a seized person is given the prerequisite advice by the police, the court must still determine on the record before it whether the person has participated in the encounter voluntarily." <u>Id.</u> at 261, 925 P.2d at 829 (quotation marks omitted) (quoting <u>Kearns</u>, 75 Haw. at 573-74, 867 P.2d at 910 (Levinson, J., concurring)). That is, a defendant's objective knowledge of his or her constitutional rights is not a substitute for free and unconstrained consent.

Further, when an individual is in the custody of the government, it is the State's "particularly heavy" burden to

demonstrate that such consent was "freely and voluntarily given," free of covert force, explicit or implicit coercion, and implied threat.  Ganal, 81 Hawai'i at 368, 917 P.2d at 380; Russo, 67 Haw. at 137, 681 P.2d at 562.  Although the "mere fact that a suspect is under arrest does not negate the possibility of [] voluntary consent," proof of voluntary consent remains "important."  Price, 55 Haw. at 443-44, 521 P.2d at 377.  When the "coercive atmosphere" of state custody is persistent, it is not dispelled merely by provision of other constitutional protections to the defendant, such as being advised of "Miranda warnings shortly before being asked for consent to a search." See id.

Thus, when a court examines the totality of the circumstances to determine whether a person consented to a search, the decisions of this court provide significant guidance.  These decisions protect the free and unconstrained choice to retain or waive the rights afforded by article I, section 7, without compromise of the individual dignity and personal autonomy that inhere within that provision.

The court is obliged to undertake the "most careful scrutiny" of the circumstances in which consent has been alleged to ensure that the State's burden to demonstrate consent has been met, a burden that increases when the person is in custody at the time the purported consent was obtained.  Informing the

person of the right to refuse consent is a relevant factor, but it cannot decide the matter. Similarly, acquiescence or a manifestation of assent may nonetheless be insufficient to demonstrate consent when coercive elements are present. Finally, the request by the State for consent or waiver of the rights expressed by article I, section 7 must be more than perfunctory and provide the individual with a genuine and meaningful choice; that is, there must be some intimation that an objection to the search would be significant or that to withhold consent would not be futile.

### 2. Consent may be withdrawn

As a corollary of the requirement that consent to a search must be voluntary, consent to a search may be revoked or withdrawn at any time before the search has been completed. "A suspect may of course delimit as he chooses the scope of the search to which he consents." Florida v. Jimeno, 500 U.S. 248, 252 (1991). "Clearly a person may limit or withdraw his [or her] consent to a search, and the police must honor such limitations." United States v. Dyer, 784 F.2d 812, 816 (7th Cir. 1986); see also Burton v. United States, 657 A.2d 741, 746 (D.C. 1994) (citing Jimeno and Dyer to conclude, "We think these authorities compel the conclusion that when the basis for a warrantless search is consent, consent may be withdrawn any time prior to completion of the search."); United States v. McWeeney,

454 F.3d 1030, 1034 (9th Cir. 2006) ("A suspect is free . . . to delimit or withdraw his or her consent at anytime."); United States v. Ho, 94 F.3d 932, 936 n.5 (5th Cir. 1996) ("A consent which waives Fourth Amendment rights may be limited, qualified, or withdrawn."); United States v. Carter, 985 F.2d 1095, 1097 (D.C. Cir. 1993) (recognizing a constitutional right to withdraw consent to a search); LaFave, supra note 23, § 8.1(c).

Additionally, "as the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai‘i Constitution," we recognize our state constitution as an independent source of protection for our citizens. Kaluna, 55 Haw. at 369, 520 P.2d at 58. Accordingly, the right provided by article I, section 7 of the Hawai‘i Constitution to be free of warrantless searches, when no exception to the warrant requirement is present, carries with it the right to withdraw consent to a search.

In this case, two forms of consent to a bodily search are relevant to the discussion: (1) irrevocable consent allegedly deemed by statute and (2) informed and voluntary consent under the totality of circumstances.

**C.    Irrevocable consent to a search allegedly deemed by statute is contrary to our law**

Every person who drives on the roads of Hawai'i is deemed to have given consent to a BAC test when suspected of OVUII.

> Any person who operates a vehicle upon a public way, street, road, or highway or on or in the waters of the State shall be deemed to have given consent . . . to a test or tests approved by the director of health of the person's breath, blood, or urine for the purpose of determining alcohol concentration or drug content of the person's breath, blood, or urine, as applicable.

HRS § 291E-11(a) (emphasis added).  However, before administering a BAC test, police must inform the driver that his or her "deemed" consent may be withdrawn by refusing to submit to testing.

> The test or tests shall be administered at the request of a law enforcement officer having probable cause to believe the person operating a vehicle . . . is under the influence of an intoxicant or is under the age of twenty-one and has consumed a measurable amount of alcohol, only after:
>
> A lawful arrest; and
>
> The person has been informed by a law enforcement officer that the person may refuse to submit to testing under this chapter.

HRS § 291E-11(b) (emphases added).  The requirement that police must inform the person that consent may be withdrawn is in accordance with other provisions of the implied consent law: "[i]f a person under arrest refuses to submit to a breath, blood, or urine test, none shall be given, except as provided in

section 291E-21."[26]   HRS § 291E-15 (emphasis added); see also HRS § 291E-65(a) ("If a person under arrest . . . refuses to submit to a breath or blood test, none shall be given . . . ." (emphasis added)).   "Thus, as the statutory language makes clear, a driver's 'implied consent' to an evidentiary chemical alcohol test is qualified by his or her implied right to refuse such a test . . . ."  State v. Wilson, 92 Hawai'i 45, 49, 987 P.2d 268, 272 (1999) (emphasis added).

This court has upheld the State's OVUII "implied consent scheme" only when the driver is "afforded . . . the opportunity to make a knowing and intelligent decision whether to take an evidentiary [BAC] test."[27]   Id. at 49-50, 987 P.2d at 272-73.   "[P]olice officers have an affirmative duty to clearly and accurately inform drivers of their implied right to consent or refuse."[28]   Id. at 52-53, 987 P.2d at 275-76 (emphasis added).

---

[26]     A warrantless BAC test may be required by police pursuant to HRS § 291E-21 from the operator of any vehicle involved in a collision resulting in injury to or the death of any person.  Such a test does not offend the Hawai'i Constitution "so long as (1) the police have probable cause to believe that the person has committed a DUI offense and that the blood sample will evidence that offense, (2) exigent circumstances are present, and (3) the sample is obtained in a reasonable manner."  State v. Entrekin, 98 Hawai'i 221, 232, 47 P.3d 336, 347 (2002).  In Entrekin, "exigent circumstances were clearly present."  Id. at 233, 47 P.3d at 348.

[27]     See also State v. Garcia, 96 Hawai'i 200, 204, 29 P.3d 919, 923 (2001) (reaffirming Wilson and restating that a police officer cannot "give a driver arbitrary, false, or misleading information regarding a driver's rights under the implied consent law and still compel the admission of the results in the criminal context").

[28]     The language of HRS § 291E-15 requires police to inform a driver arrested for OVUII and who refuses to submit to a BAC test of the "sanctions
(continued. . .)

Thus, we have recognized that the State's statutory consent scheme carries with it a right to withdraw that consent, such that when the State requests that an individual submit to a BAC test, that individual must be afforded an opportunity to decide whether to submit to testing. Id.

For a person to be deemed by the implied consent law to have irrevocably consented to be searched also conflicts with this court's decision in Nakamoto. In Nakamoto, this court found that consent given under the "belie[f] that she had no other alternative but to comply," or a "reasonabl[e] belie[f] that she had no other alternative but to submit" could "not validate an otherwise improper intrusion." Nakamoto, 64 Haw. at 22, 635 P.2d at 951. Accordingly, if a person waives the right to refuse to be searched under the belief that he or she must waive that right, then the waiver is invalid. Similarly, if the right to refuse is foreclosed by statute, then there is no

---

(. . .continued)
under section 291E-41, 291E-65, or 291E-68" as a necessary condition for the sanction of the specified statute to be imposed. See HRS § 291E-15(1) (utilizing the disjunctive connector "or" in enumerating the penalties that a police officer must inform a driver); HRS § 291E-15(2) (a person's refusal of a BAC test will subject that "person to the procedures and sanctions under part III or section 291E-65, as applicable" (emphases added)). Further, the legislative history of HRS § 291E-15 indicates that police are obliged to inform an arrestee only of the sanctions that may be sought to be imposed. See H. Stand. Comm. Rep. 762-06, in 2006 House Journal, at 1391-92 (noting that the legislative intent for the notice requirement is to "inform an arrested driver of sanctions that may be imposed for refusing to take" a BAC test (emphasis added)). For instance, HRS § 291E-65 is only applicable to a person under twenty-one years of age; it is accordingly unnecessary to inform a person over twenty-one years of age of the sanctions provided by that section.

alternative but to comply and submit; it follows that a waiver

of the right to refuse, given under the belief that one's

consent is mandated by the statutory consent scheme, will always

be invalid as a basis to conduct a search.

Based on the statutory provisions of the implied

consent law, see HRS §§ 291E-11(b), 291E-15, 291E-65(a), and the

protections of the Hawai'i Constitution as interpreted by the

decisions of this court, a person may refuse consent to submit

to a BAC test, and the State must honor that refusal.

Therefore, in order to legitimize submission to a warrantless

BAC test under the consent exception, consent may not be

predetermined by statute, but rather it must be concluded that,

under the totality of the circumstances, consent was in fact

freely and voluntarily given.[29]

---

[29] "It is apparent that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from constitutional restrictions." Bailey v. Alabama, 219 U.S. 219, 239 (1911) (holding that under the Thirteenth Amendment, a state could not criminalize the failure to perform under a contract) (quoted approvingly in Speiser v. Randall, 357 U.S. 513, 526 (1958) (holding that a tax exemption could not be based on a state's infringement of a veteran's First Amendment rights)). Here, if a person could not withdraw one's implied consent, the prohibition against warrantless searches would be transgressed by the creation of a statutory conclusive presumption.

### D. Informed and voluntary consent under the totality of circumstances is not present in this case

#### 1. Inherent coercion of a request to search conditioned on imprisonment

The decisions of this court jealously protect our citizens from coerced submission to a search, because no matter how subtly the coercion was applied, the resulting "consent" is no more than a pretext for the intrusion forbidden by article I, section 7 of the Hawaiʻi Constitution. See Trainor, 83 Hawaiʻi at 261, 925 P.2d at 829; see also Patterson, 58 Haw. at 467, 571 P.2d at 748-49 ("voluntary" equates to "uncoerced"); Price, 55 Haw. at 443, 521 P.2d at 377 ("We equate voluntary with uncoerced."). Where a search may not be accomplished without consent, a request for consent that subjects the person to imprisonment for refusal is calculated to overbear a defendant's will in order to impel submission. Balogh v. Balogh, 134 Hawaiʻi 29, 45, 332 P.3d 631, 647 (2014) (referencing Black's Law Dictionary to define "coercion" as "[c]ompulsion of a free agent by . . . threat of physical force"); see also Bailey v. Alabama, 219 U.S. 219, 244-45 (1911) (striking a state statute that provided criminal penalties for failure to pay a contractual debt because the "natural operation of the statute . . . furnishes a convenient instrument for [] coercion" forbidden under the Federal Constitution); Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442 (1911) (noting in the context of a

contempt charge that an "order for imprisonment . . . is not to vindicate the authority of the law . . . but . . . is intended to coerce the defendant to do the thing required"); Delia v. City of Rialto, 621 F.3d 1069, 1077 (9th Cir. 2010) (finding consent to search was coerced when defendant "was cautioned . . . that his failure to cooperate . . . could result in charges of insubordination and possible termination of his employment"), rev'd on other grounds sub nom., Filarsky v. Delia, 132 S. Ct. 1657 (2012); Inouye v. Kemna, 504 F.3d 705, 713 (9th Cir. 2007) (finding state action requiring participation in a religious program "clearly coercive" based on the threat of imprisonment); United States v. Ocheltree, 622 F.2d 992, 994 (9th Cir. 1980) (finding consent was not voluntary where a government agent informed a defendant "that if consent was not forthcoming [the agent] would attempt to secure a search warrant, [with] a clear implication that appellant would be retained in custody until the warrant was obtained").

As noted, the Implied Consent Form that was presented to Won informed him, pursuant to HRS § 291E-68, that "if you refuse to submit to a [BAC] test, you shall be subject to up to thirty-days imprisonment and/or a fine up to $1,000." See HRS §§ 291E-68; 701-107. Failing to submit to a search pursuant to HRS § 291E-68 is a petty misdemeanor offense, for which other sanctions in addition to a jail term and a fine may be imposed,

including the payment of other court assessments and fees. HRS §§ 706-605(1)(d), (6); 706-640(1)(e).

Where arrest, conviction, and imprisonment are threatened if consent to search is not given, the threat infringes upon and oppresses the unfettered will and free choice of the person to whom it is made, whether by calculation or effect.[30] See id. at 261-63, 925 P.2d at 829-31 (finding that a permissive response to a request to search the defendant resulted only from "inherently coercive" circumstances that were "calculated to overbear [the defendant's] will"); Pau'u, 72 Haw. at 508, 824 P.2d at 835 (same). Thus, the threat of the criminal sanction communicated by the Implied Consent Form for refusal to submit to a BAC test is inherently coercive.[31]

---

[30]   The ICA characterized HRS § 291E-68 as a "threat" designed to increase submission: "the Hawaii Legislature has chosen to use the threat of . . . criminal sanctions to encourage arrestees to submit to testing." Won, 134 Hawai'i at 65, 332 P.3d at 667. Notably, the legislature was cognizant of the fact that "to criminalize refusal to submit to a breath, blood, or urine test infringes upon important personal rights." H. Stand. Comm. Rep. No. 907-10, in 2010 House Journal, at 1343; see also 2010 House Journal, at 838 (statement of Rep. Karamatsu) (mentioning that criminal refusal sanctions "make criminals of people who exercise their right to refuse" and could "result[] in situations where the arrestee is convicted of refusal when the test result would have indicated that the arrestee was not guilty of [OVUII]"). It is noted that, according to the dissent, a significant majority of states have not adopted a statute providing for criminal sanctions for OVUII arrestees who refuse BAC testing. Dissent at 12 n.3.

[31]   In concluding that the consent given in Nakamoto was involuntary and an "inherent product of coercion," this court emphasized the fact that it was "given in the belief that [she] would forfeit her right to attend the concert[] if she refused to be searched." Nakamoto, 64 Haw. at 22, 635 P.2d at 951 (citing Gaioni v. Folmar, 460 F. Supp. 10 (M.D. Ala. 1978); Wheaton v. Hagan, 435 F. Supp. 1134 (M.D.N.C. 1977)). Thus, the court held that Nakamoto's consent did not "validate an otherwise improper intrusion." Id.

(continued. . .)

## 2. Coercion inherent in conditioning the preservation of fundamental rights on the waiver of other constitutional rights

Article I, sections 5 and 7 of the Hawai'i Constitution provide a fundamental right not to be arrested except for probable cause.[32] State v. Barnes, 58 Haw. 333, 335, 568 P.2d 1207, 1209 (1977) ("[A]n arrest without a warrant will be upheld only where there was probable cause for the arrest."). Probable cause exists when the arresting officer has reasonable grounds to believe, from facts and circumstances personally known to the officer, or of which the officer has trustworthy information, that the person arrested has committed or is committing an

---

(. . .continued)
   If, in Nakamoto, this court found as inherently coercive the threat of being barred from entering a government-owned arena if a concertgoer refuses a warrantless search, the threat of being subjected to criminal sanctions if a suspected OVUII offender refuses a BAC test produces a significantly more severe level of coercion.

[32]   Section 5 of article I provides as follows:

   No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

Haw. Const. art. I, § 5. Article I, section 7 provides as follows:

   The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

Haw. Const. art. I, § 7.

offense.  State v. Lloyd, 61 Haw. 505, 509, 606 P.2d 913, 916 (1980).  Thus, as an arrest may be effectuated only when there is reason to believe that a person has committed or is committing an offense, it is self-evident that a person has a right not to be arrested for lawful behavior.

In situations in which police have not obtained a warrant and no other exception to the warrant requirement is present, the choice presented by the Implied Consent Form forces a defendant to elect between fundamental rights guaranteed by the Hawai'i Constitution.  On the one hand, the person may exercise the constitutional right to refuse to be searched, thus relinquishing the constitutional right to not be arrested for conduct that is authorized by the constitution.

Alternatively, the person may "choose" to be searched in order to prevent being arrested for the refusal crime, thus forfeiting the constitutional right to not be subject to a search absent a warrant or an exception to the warrant requirement.

That is, with respect to both alternatives, a person must surrender one constitutional right for preservation of another.  However, the government may not condition a right guaranteed in our constitution on the waiver of an equivalent

constitutional protection.[33]  State v. Joseph, 109 Hawai'i 482, 497, 128 P.3d 795, 810 (2006).  "[I]t [is] intolerable that one constitutional right should have to be surrendered in order to assert another."  Id. (quoting Simmons v. United States, 390 U.S. 377 (1968)).

It is manifestly coercive to present a person with a "choice" that requires surrender of the constitutional right to refuse a search in order to preserve the right to not be arrested for conduct in compliance with the constitution.  It is equally coercive to "allow" the person to preserve the fundamental right to refuse a search by requiring the person to relinquish the right to not be arrested for conduct that does not violate the constitution.

### 3. Significant punishment magnifies coercion

In exercising the constitutional right to refuse to be searched, a driver is forced to manifest to the police a willingness to commit a crime.  That is, the driver must commit a crime in police presence in order to exercise the refusal allowed by statute and the right to withdraw consent provided by the constitution.  The coerciveness present in such

---

[33] Similarly, a state "cannot abridge [the] constitutional rule [that police may not arrest a person except on probable cause] by making it a crime" to refuse to answer police requests for identification, "any more than it could abridge the protections of the Fifth and Sixth Amendments by making it a crime to refuse to answer police questions once a suspect has been taken into custody."  Kolender v. Lawson, 461 U.S. 352, 366-67 (1983) (Brennan, J., concurring).

circumstances, requiring commission of a new crime in order to preserve the right not to be searched, is enhanced by the severity of the statutory penalty for the refusal offense.

The statute criminalizing refusal to submit to a BAC test, HRS § 291E-68, authorizes imprisonment that is six times greater than that provided by the OVUII offense for a first-time offender.  Specifically, the refusal offense is punishable for up to thirty days in jail, whereas a first OVUII offense carries a maximum of five days of imprisonment.  Compare HRS §§ 701-107, with 291E-61 (b)(1)(C)(ii).  Thus, the coercion produced by the mandated criminal sanction for refusing to waive a constitutional right is increased as a result of the serious penalties authorized for refusing to waive this right.

### 4. Under the totality of the circumstances, Won's election to submit to the BAC test was not voluntary

Our de novo review of the record indicates that while in custody, Won was informed both of his right to refuse to consent and of the fact that should he exercise his right to refuse to submit to a BAC test, his refusal would constitute the commission of a crime: he would be subject to re-arrest for the additional crime of refusal to consent, and he would be subject to up to thirty days of imprisonment, a fine not to exceed $1,000, as well as other sanctions.  Under these circumstances, Won marked the Implied Consent Form with a manifestation of

assent. However, as in Trainor, the fact that the right to refuse the test was communicated and that there was a manifestation of assent by Won does not reduce our duty to determine whether Won voluntarily consented to the search. See Trainor, 83 Hawai'i at 260, 925 P.2d at 828.

The circumstances further indicate that the election presented by the Implied Consent Form forced Won to select between fundamental constitutional rights and that refusal to provide consent carried with it a significant punishment.

As in Russo, it is apparent that "[w]hile assent could be inferred from" Won's election on the Implied Consent Form, the context in which it was made "leads us to believe [that it] did not represent an essentially free and unrestrained choice." See Russo, 67 Haw. at 138, 681 P.2d at 562. Directed to sign a form in the presence of a police officer to indicate either submission to a search or willingness to commit a crime, it is clear that the "circumstances begat an obligation on [the defendant's] part" to comply with the implicit directive of the Implied Consent Form. See Trainor, at 262, 925 P.2d at 830 (alterations and internal quotation marks omitted).

Where the Trainor court found that "it would be simply wrong to suggest that" the defendant was actually able to walk away from the encounter, id., here it would be simply wrong to conclude that an instruction that a person's refusal to consent

to a BAC test was a crime, with stated penalties of up to thirty days of incarceration and a $1,000 fine, would not interfere with a person's free and unconstrained choice. The threat of imprisonment is inherently coercive, see State v. Brooks, 838 N.W.2d 563, 573-74 (Minn. 2013, Stras, J., concurring), cert. denied, 134 S. Ct. 1799 (2014); thus, the present case is more coercive than the circumstances in Trainor and Nakamoto because rather than speculate whether a refusal to consent to a search might carry unwanted consequences, Won was informed in no uncertain terms that the consequence of his refusal made him subject to imprisonment.

Thus, as in Nakamoto, it is clear that Won had no other alternative to avoid prosecution for the refusal offense but to submit to the search; as in Pua'a, withholding consent was futile, as any other course would have resulted in Won's commission of a crime. Consequently, the position in which Won was placed, because of the criminal sanction for refusal, the forced selection between constitutional rights, and the potential significant punishment the sanction entailed, was inherently coercive.[34] See Trainor, 83 Hawai'i at 263, 925 P.2d

---

[34] It bears repeating here that this opinion does not concern the civil administrative penalties attendant to a driver's refusal of BAC testing. See HRS § 291E-41(d) (Supp. 2010); see generally HRS Chapter 291E, Part III. Those types of sanctions are not affected in any way by our decision. Because we conclude only that the threat of being subjected to criminal sanctions inherently coerces a suspected OVUII offender into giving
(continued. . .)

at 831; Ramones, 69 Haw. at 405, 744 P.2d at 517; Shon, 47 Haw. at 166, 385 P.2d at 836.

As the coercion engendered by the Implied Consent Form runs afoul of the constitutional mandate that waiver of a constitutional right may only be the result of a free and unconstrained choice, the choice presented to Won compromised the values of individual dignity and personal autonomy protected by article I, section 7 of the Hawaiʻi Constitution. For this reason, Won's election on the Implied Consent Form to submit to a BAC test is invalid as a waiver of his right not to be searched.

Therefore, with little or no indication in the record to demonstrate that Won's election to submit to the BAC test was the result of his free and unconstrained choice, the State has

_____

(. . .continued)
consent, if a police officer does not inform the offender of the criminal sanctions because they were omitted from the notice given by the officer, see HRS § 291E-15; supra note 28, then proving OVUII through evidence of a defendant's blood alcohol content, see HRS § 291E-61(a)(3)–(4), will remain a viable option for purposes of prosecution. Further, in cases where BAC evidence is inadmissible because it was obtained in the absence of valid consent, the State is free to rely upon "other relevant evidence of intoxication in order to prosecute" an accused OVUII offender pursuant to "the criminal offense of [OVUII], e.g., the manner in which [the accused] was observed to have driven his vehicle, his conduct in performing the requisite alcohol tests, his appearance, demeanor, and other valid police observations of signs of intoxication." State v. Wilson, 92 Hawaiʻi 45, 54 n.14, 987 P.2d 268, 277 n.14 (1999); see HRS § 291E-61(a)(1)–(2) (OVUII can be proven by evidence that a person is operating a vehicle "[w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty" or "[w]hile under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner").

not met its particularly heavy burden to demonstrate the

voluntary waiver of a constitutional right.[35]  Accordingly, Won's

election to submit to the BAC test was not based on voluntary

consent.[36]

### E.    The ICA's analysis was in error

The protections guaranteed in article I, section 7 of

the Hawai'i Constitution "against unreasonable searches and

seizures and invasions of privacy" are preserved by the

fundamental principle in our law that warrantless searches are

unreasonable per se, absent "a few specifically established and

well-delineated exceptions."  Ganal, 81 Hawai'i at 368, 917 P.2d

at 380.  Hence, under Hawai'i law, it is not accurate to say that

---

[35]    Our decision is consistent with this court's recognition of our constitution's protection in article I, section 7 against the impairment of voluntary consent by coercion.  See, e.g., Trainor, 83 Hawai'i at 263, 925 P.2d at 831; Nakamoto, 64 Haw. at 22, 635 P.2d at 951.  Thus, the decisions of other jurisdictions that have not found the threat of imprisonment for failing to submit to a BAC test to be inherently coercive, see, e.g., State v. Smith, 849 N.W.2d 599 (N.D. 2014); State v Brooks, 838 N.W.2d 563 (Minn. 2013); Burnett v. Municipality of Anchorage, 806 F.2d 1447 (9th Cir. 1988), are at odds with the preservation of voluntary choice and respect for human dignity embodied by Hawai'i law.  See, e.g., Kaluna, 55 Haw. at 366, 520 P.2d at 57.

[36]    The dissent takes issue with this opinion for not considering the facial constitutional validity of the criminal refusal sanctions under the implied consent statutory scheme.  Dissent at 31—32.  However, Won agreed to take a breath test and, therefore, was not subjected to any criminal sanctions attendant to a refusal of a BAC test.  Thus, we resolve this case on the question of whether Won acceded to the breath test voluntarily and without coercion in accordance with the requirements of consent embodied by article I, section 7 of the Hawai'i Constitution.  This is consistent with the longstanding canon counseling "courts [to] avoid reaching constitutional questions in advance of the necessity of deciding them."  Hawaii Gov't Employees Ass'n v. Lingle, 124 Hawai'i 197, 208, 239 P.3d 1, 12 (2010) (quoting City & Cnty. of Honolulu v. Sherman, 110 Hawai'i 39, 56 n.7, 129 P.3d 542, 559 n.7 (2006)).

"the ultimate measure of the constitutionality of a governmental
search is 'reasonableness,'" as stated by the ICA.  Won, 134
Hawai'i at 78, 332 P.3d 680 (citing King, 133 S. Ct. at 1969).
The Hawai'i Constitution does not determine whether bodily
intrusions are lawful under an indeterminate balancing test for
"reasonableness," Won, 134 Hawai'i at 78, 332 P.3d at 661;
instead, a warrantless search is precluded where no exception
rooted in our law is present.[37]  Wallace, 80 Hawai'i at 393, 910
P.2d at 706.

The ICA asserted that "the Legislature presumably
could have sought to make the implied consent to breath testing
completely irrevocable."  Won, 134 Hawai'i at 78-79, 332 P.3d at
680-81.  Consequently, the ICA acknowledged the existence of a
statutory right to refuse consent under our law, but it
concluded that it is ineffective and cannot invalidate the
consent deemed by statute.  Under the ICA's analysis, it is not
clear what remains of a "right" to refuse to submit to a BAC

---

[37]     The ruling in In Interest of Doe, 77 Hawai'i 435, 444, 887 P.2d
645, 654 (1994), relied upon the ICA for its "reasonableness" analysis, was
specifically confined to the particular circumstances presented in that case.

> We emphasize that the exception to the warrant requirement
> of article I, section 7 of the Hawai'i Constitution, and the
> relaxation of the probable cause standard to one of
> reasonable suspicion that we prescribe in the present case,
> are strictly limited to the school context and the unique
> balance of interests present therein.

Id. (emphasis added).

test when that right is "modified."  As discussed above, it is well settled that an individual retains the right to consent or to decline to consent to a BAC test at the time the State makes its request.  Garcia, 96 Hawai'i at 207, 29 P.3d at 926; Wilson, 92 Hawai'i at 49-50, 987 P.2d at 272-73; Nakamoto, 64 Haw. at 21, 635 P.2d at 951.  Thus, contrary to the ICA's assertion, the right to refuse to submit to a BAC test is not rendered ineffectual by the statutory implied consent.  HRS §§ 291E-11(b), 291E-15, 291E-65(a).

The ICA also appears to extend the consent allegedly deemed by statute into the protections secured by the Federal and Hawai'i Constitutions, stating that "[t]he limited statutory right to refuse testing also does not mean that the driver's implied consent is not valid for purposes of the Fourth Amendment and Article I, Section 7."  Won, 134 Hawai'i at 78, 332 P.3d at 680.  That is, the ICA asserts that the driver's implied consent is recognized by or affirmed under the constitution, and therefore, there is no right to withdraw consent.  However, the right to refuse consent to a BAC test is not merely a right provided by statute; rather, the right to refuse to consent to be searched and the right to withdraw consent are intrinsic in our constitution.  Nakamoto, 64 Haw. at 21, 635 P.2d at 951; Price, 55 Haw. at 443, 521 P.2d at 377.

The ICA's balancing approach to determine reasonableness has not been adopted in our State and does not comport with an individual's rights against warrantless searches guaranteed by the Hawai'i Constitution.  Further, this approach discounts the statutory and constitutional rights to refuse to submit to a BAC test and does not account for the coercive nature of the threat of imprisonment communicated by the Implied Consent Form, the forced selection between constitutional rights, or the significant punishment authorized for the refusal offense.  Accordingly, we conclude that the ICA's analysis is in error.[38]

### F.    The dissent's analysis is erroneous

### 1. The doctrine of unconstitutional conditions does not apply

The dissent employs the doctrine of unconstitutional conditions,[39] a different balancing test than that used by the

---

[38]    The ICA opinion also implies that counsel would be of no benefit to a person determining whether to sign the HPD-396K Consent Form because "counsel could not have directly advised Won to refuse to submit to testing." Won, 134 Hawai'i at 74, 332 P.3d at 676.  Even under the ICA premise that there is no right to refuse consent to a BAC test, an important function of counsel is to explain to a client the choices that may be presented and ramifications that may flow from the election of one course of action as opposed to another.  We thus reject any implication by the ICA Opinion of narrowing the role and importance of counsel.

[39]    This doctrine "limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary." United States v. Scott, 450 F.3d 863, 866 (9th Cir. 2006). It also ensures that constitutional rights are not eroded "by preventing the government from coercing people into giving them up." Koontz v. St. Johns River Water Mgmt. Dist., 133 S. Ct. 2586, 2594 (2013).

(continued. . .)

ICA, in concluding that the legislature was authorized to criminalize the refusal by a suspected OVUII offender of a BAC test as a condition of the privilege of driving on public roads. Dissent at 16–29. Significantly, this Court has never applied this doctrine in criminal cases,[40] for when law enforcement conducts a warrantless search with the intention to discover evidence of a crime, article I, section 7 governs. And as already made clear, the proper inquiry in those instances is whether the State has proven that the warrantless search falls within an exception to the warrant requirement recognized by

_____

(. . .continued)
Analysis under this doctrine consists of two parts. First, the court must identify the condition imposed by the government in exchange for the benefit. Nakamoto, 64 Haw. at 23, 635 P.2d at 952. Second, a balancing test must be conducted to determine whether the governmental interest in imposing the condition is so compelling as to clearly outweigh the burdens that the condition levies upon constitutional guarantees. Id. at 23–24, 635 P.2d at 952.

[40] This court has utilized or at least mentioned this doctrine only in civil cases. See Nakamoto v. Fasi, 64 Haw. 17, 22, 635 P.2d 946, 951 (1981); Perry v. Planning Comm'n of the Cnty. of Haw., 62 Haw. 666, 682, 619 P.2d 95, 106 (1980); The King v. Lau Kiu, 7 Haw. 489, 492 (Haw. Kingdom 1888). At least one state appellate court has explicitly rejected a balancing approach in the context of a case similar to ours, reasoning that the fundamental inquiry is whether the implied consent statute creates an impermissible per se exception to the warrant requirement, not whether the legislature is authorized to enact such a statute. See Weems v. State, 434 S.W.3d 655, 665 (Tex. App. 2014), pet. granted (Aug. 20, 2014).

Further, this doctrine was not used in any of the other state appellate cases where criminal refusal sanctions were found not to be inherently coercive. See, e.g., People v. Harris, 184 Cal. Rptr. 3d 198, 213 (Cal. Ct. App. 2015) (applying the totality of the circumstances test to determine whether the consent exception to the warrant requirement validated the warrantless blood test), review denied (June 10, 2015); State v. Brooks, 838 N.W.2d 563, 569 (Minn. 2013), cert. denied, 134 S. Ct. 1799 (2014) (same); State v. Modlin, 867 N.W.2d 609, 619 (2015) (same); State v. Smith, 849 N.W.2d 599, 606 (N.D. 2014) (same, but defendant was subjected to a breath test).

this Court.  See Ganal, 81 Hawai'i at 368, 917 P.2d at 380.

Thus, there is a presumption of invalidity when a warrantless

search is at issue, State v. Heapy, 113 Hawai'i 283, 307, 151

P.3d 764, 788 (2007), which can be rebutted by the State not by

proving that the governmental interest outweighs the

unauthorized privacy intrusion, dissent at 17, but by

demonstrating that a well-recognized and narrowly defined

exception to the warrant requirement applies.  Ganal, 81 Hawai'i

at 368, 917 P.2d at 380.

Under the dissent's theory--that the government can

criminalize the exercise of the constitutional right to withhold

or revoke consent because of the government's compelling

interest in protecting the public from OVUII offenders--there is

nothing to proscribe the government from branding as a crime the

exercise of other constitutional rights.  The government need

only cite dire statistics resulting from a particular crime to

claim that there is a serious societal problem, find or create a

governmentally provided privilege, attach to that privilege a

condition waiving a constitutional right, and then rationalize

such a waiver by referring to published reports or articles that

have identified its possible benefits.

That is, the dissent relegates constitutionally

guaranteed rights to a position in which they may be eliminated

any time statistics could be marshalled to profess a need for

doing so and the exercise of that right can be associated with a negative societal impact.  For example, in the OVUII context, the dissent's analytical rubric could potentially allow the government to eviscerate all constitutionally guaranteed rights of motorists.[41]  If the compelling interest of the government trumps the constitutional right not to be searched without a warrant, it can be extended to similarly defeat the Miranda rights or the right to counsel of an OVUII defendant by making their exercise a criminal offense if it can be statistically shown that instances of OVUII-related incidents or casualties are diminished when Miranda rights and the right to counsel are waived.[42]

Weighing the constitutional rights of an arrestee against a governmental interest in order to determine the

---

[41]    The elimination of constitutional rights in the criminal arena, through the application of the unconstitutional conditions doctrine that the dissent endorses, would facilitate convictions, the attendant consequences of which include incarceration, criminal fines, and the stigma of being branded a criminal.  These consequences are significantly more serious than those exacted in the civil arena, where this doctrine was designed to operate in.  See Zap v. United States, 328 U.S. 624, 628 (1946) (holding that Fourth and Fifth Amendment rights could yield as a condition of a contractor's agreement with the government); Yin v. California, 95 F.3d 864, 872 (9th Cir. 1996) (holding that a state employee's union "contract may under appropriate circumstances diminish (if not extinguish) legitimate expectations of privacy"); Wyman v. James, 400 U.S. 309, 317—18 (1971) (conditioning receipt of welfare benefits upon home visits found valid).

[42]    Implicit in the dissent's argument is that by criminalizing the right to refuse to submit to a breath or blood test, OVUII arrestees will be coerced into taking such a test, increasing the conviction rate of arrestees, and in turn decreasing OVUII-related casualties.  See Dissent at 20—24.  The same outcome could reasonably be anticipated by eliminating Miranda rights or the right to counsel of OVUII defendants.

validity of a warrantless search is a particularly dubious enterprise, because "the needs of law enforcement stand in constant tension with the Constitution's protections of the individual against certain exercises of official power.  It is precisely the predictability of these pressures that counsels a resolute loyalty to constitutional safeguards." Almeida-Sanchez v. United States, 413 U. S. 266, 273 (1973).  As one state appellate court aptly recognized when it refused to apply a balancing approach in a similar case, "the primary purpose of the search . . . is for investigation of a crime based on a discretionary determination by a law-enforcement officer that there is probable cause of intoxication." State v. Villarreal, No. PD-0306-14, 2014 WL 6734178, at *17 (Tex. Crim. App. 2014), reh'g granted (Feb. 25, 2015).  Because the governmental interest when a search is at issue is intertwined with a criminal investigative purpose, the need for a warrant is intensified to preserve the constitutional rights of the person to which the investigation is directed.

Even assuming that the doctrine of unconstitutional conditions could somehow be considered applicable in this case, the dissent's analysis would remain flawed.  The condition imposed by the government in this case is implied consent to a warrantless search, in the form of a BAC test on a motorist suspected of OVUII, for the privilege of driving on public

roads.  See HRS § 291E-11(a)—(b); cf. Nakamoto, 64 Haw. at 23, 635 P.2d at 952 (stating that the governmentally levied condition was the "submission [by concertgoers] to a search of their persons" in exchange for the privilege of entering a government-owned arena to attend a concert).

According to the dissent, however, the condition imposed by the government is the criminalization of the withdrawal of implied consent.  Dissent at 15—16.  This is a misidentification of the condition implicated, since the criminal refusal sanctions here are akin to the exclusion in Nakamoto of a concertgoer from a government-owned arena if he or she had refused a warrantless search of his or her bag. Plainly, the criminal refusal sanctions here and the exclusion from entry in Nakamoto are merely the consequences of a person's refusal to abide by the governmentally imposed condition--a warrantless search--and are not the conditions from which an unconstitutional conditions analysis must proceed.[43]

---

[43]    The dissent also seems to be using the unconstitutional conditions doctrine to conclude that actual consent procured from a suspected OVUII offender under HRS § 291E-11(b) is always valid if the requirements of the implied consent statute is adhered to, but this doctrine applies only when "a government seeks to achieve its desired result by obtaining bargained-for consent of the party whose conduct is to be restricted." Richard A. Epstein, Unconstitutional Conditions, State Power, and the Limits of Consent, 102 Harv. L. Rev. 4, 7 (1988) (emphasis added).  The bargained-for consent here is a motorist's implied consent to warrantless BAC testing under HRS § 291E-11(a) in exchange for the privilege of driving on public roads.  Hence, the unconstitutional conditions doctrine is meant to determine the validity of implied consent under HRS § 291E-11(a).  The doctrine is not calibrated to measure the validity of actual, non-bargained-for consent required by HRS § 291E-11(b) because, as already explained, consent is

(continued. . .)

Further, even if one were to find that the correctly identified condition is criminalizing the withdrawal of implied consent and that it passes muster under the unconstitutional conditions doctrine,[44] these findings are not determinative of the legal propriety of the search.[45]  What is dispositive is

---

(. . .continued)
subject to an inquiry into the totality of the circumstances to determine voluntariness.

At the very outset, therefore, the dissent's analysis is flawed as is it inconsistent with the unconstitutional conditions framework that it purportedly follows.

[44]    But see Villarreal, 2014 WL 6734178, at *18 (concluding that "a DWI suspect's privacy interest outweighs the State's interest in preventing drunk driving through warrantless searches" and quoting the McNeely plurality in "stating that 'the general importance of the government's interest in this area does not justify departing from the warrant requirement without a showing' that some established exception . . . applies").

[45]    The dissent concludes that the intrusion into privacy resulting from a warrantless BAC test is "minimized" by the fact that OVUII arrestees are already "in custody, and thus, have a diminished expectation of privacy." Dissent at 27.  This justification is plainly contrary to our law as promulgated by Kaluna and its progeny.  In Kaluna, this Court reiterated that the state constitutional right to be free from unreasonable searches and seizures "requires that governmental intrusions into the personal privacy of citizens of this State be no greater in intensity than absolutely necessary under the circumstances."  State v. Kaluna, 55 Haw. 361, 369, 520 P.2d 51, 58-59 (1974).  In effectuating this overarching principle, this Court refused to follow the Supreme Court's allowance "of a complete body search of an individual conducted as an incident to his lawful custodial arrest," id. at 367, 520 P.2d at 57, in order to avoid "lend[ing] unprecedented power to the police to subject individuals under custodial arrest for even the most trivial offenses to the indignities of an exhaustive body search when no articulable reason supports such an intrusion other than the bare fact that the arrestee is in custody."  Id. at 369, 520 P.2d at 59.  Simply, Kaluna refused to hold "that since a lawful custodial arrest is a significant intrusion into an individual's privacy, further, 'lesser' intrusions may be made without regard for their justifications."  Id. at 370, 520 P.2d at 59.  Accordingly, the statement by the dissent that intrusion into the privacy of OVUII arrestees from a warrantless BAC test is "minimized" because arrestees are already "in custody" and "have a diminished expectation of privacy" is contrary to our law.

whether Won's consent, required by HRS § 291E-11(b) (stating that "the person may refuse to submit to testing," i.e., refuse to provide actual consent), was constitutionally valid.  This inquiry flows intrinsically from settled law in Hawai'i, which presumes every warrantless search impermissible unless it is demonstrated that the constitutional requirements of a consensual search are complied with or that another recognized exception to the warrant requirement applies.  Ganal, 81 Hawai'i at 368, 917 P.2d at 380; see also McNeely, 133 S. Ct. at 1565 (plurality opinion) (reasoning that "the general importance of the government's interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case").  Thus, Won's agreement to take the warrantless breath test in this case must be examined under an independent constitutional inquiry.

As already made clear, the government must comply with the constitutional requirements undergirding the procurement and validity of consent and cannot, by statute, alter or reshape the doctrine of consent by rendering meaningless or short-circuiting its constitutional underpinnings--the most essential among which is voluntariness. See State v. Bonnell, 75 Haw. 124, 147-48, 856 P.2d 1265, 1277 (1993) (reasoning that consent "means more than the absence of an objection"; rather, "it must be shown that

such consent was voluntarily given").  Accordingly, contrary to the dissent's view, actual consent under HRS § 291E-11(b) cannot be secured without regard to the constitutional principles fundamental to the doctrine of consent.  See State ex rel. Anzai v. City & Cnty. of Honolulu, 99 Hawai'i 508, 522, 57 P.3d 433, 447 (2002) (stating that the legislature is without power to limit constitutional guarantees by way of legislation).

## 2. The dissent creates an indefensible per se exception to the warrant requirement

The dissent's conclusion that Won's consent was valid rests solely upon its finding that the implied consent statute is a legitimate exercise of legislative authority.  Dissent at 27—28.  However, this court has never held that the implied consent statute qualifies as one of the "specifically established and well[-]delineated exceptions" to the warrant requirement under article I, section 7.  State v. Phillips, 67 Haw. 535, 539, 696 P.2d 346, 349 (1985); see also Aviles v. State, 443 S.W.3d 291, 294 (Tex. App. 2014) (holding that implied consent statutes are not permissible exceptions to the warrant requirement), pet. filed (Aug. 8, 2014); State v. Fierro, 853 N.W.2d 235, 243 (S.D. 2014) (emphasizing that the court has never held South Dakota's implied consent statute as a recognized exception to the warrant requirement).  The dissent asserts that "cooperation with a criminal implied consent regime

yields real and voluntary consent that excuses officers from obtaining a warrant." Dissent at 14. This assertion essentially treats compliance with the implied consent statute as one and the same as the constitutionally valid, voluntary consent required by HRS § 291E-11(b).[46] However, the question of whether the implied consent statute is adhered to is separate and distinct from the constitutional inquiry into whether there is actual consent to BAC testing under HRS § 291E-11(b). Williams v. State, 771 S.E.2d 373, 376-77 (Ga. 2015). The constitutional dimension of consent, therefore, overlays the inquiry into whether the implied consent statute is technically complied with. Id.

The dissent effectively renders every warrantless BAC test automatically valid for purposes of the Fourth Amendment and article I, section 7 so long as it is conducted in conformity with the implied consent statute and even if other facts and circumstances would otherwise preclude a finding of actual consent. See Dissent at 27—28. By ignoring the salient constitutional component of the inquiry, the dissent thus creates a per se exception to the warrant requirement.[47] Dissent

_____

[46] Such treatment is incorrect especially because implied consent statutes do "not take into account the totality of the circumstances present in each case, but only consider certain facts." Weems, 434 S.W.3d at 665.

[47] Cases from appellate courts in other jurisdictions holding that criminal sanctions do not necessarily render consent involuntary did not hold

(continued. . .)

at 27—28.  The categorical nature of the dissent's exception is incompatible with the principle that the validity of warrantless searches is contingent upon "all of the facts and circumstances of the particular case."  McNeely, 133 S. Ct. at 1560; see Weems, 434 S.W.3d at 665 (holding that Texas' implied consent statute created an impermissible categorical exception to the warrant requirement).

Additionally, the dissent's per se exception is irreconcilable with an authoritative understanding of the

---

(. . .continued)
that mere compliance with an implied consent statute per se satisfies the requirements of actual consent.  The inquiry in those cases still redounded to whether, based on the totality of the circumstances, actual consent was freely and voluntarily provided.  See, e.g., People v. Harris, 184 Cal. Rptr. 3d 198, 213 (Cal. Ct. App. 2015), review denied (June 10, 2015) (holding that criminal penalties by themselves do not coerce consent, but determining "whether defendant's submission in this case was freely and voluntarily given under the normal totality of the circumstances analysis"); State v. Brooks, 838 N.W.2d 563, 569 (Minn. 2013) (holding that the implied consent statute was complied with, but still analyzing the totality of the circumstances to determine whether consent was voluntarily procured), cert. denied, 134 S. Ct. 1799 (2014); State v. Modlin, 867 N.W.2d 609, 619 (Neb. 2015) (stating "that a court may not rely solely on the existence of an implied consent statute to conclude that consent to a blood test was given for Fourth Amendment purposes and that the determination of whether consent was voluntarily given requires a court to consider the totality of the circumstances"); State v. Smith, 849 N.W.2d 599, 606 (N.D. 2014) (holding that consent is not coerced because refusing a chemical test is criminally punishable, but proceeding to an examination of "the totality of the circumstances" to determinate whether consent was voluntarily given).

To reiterate, searches contended by the State to be consensual under Hawai'i law are subject to "the most careful scrutiny" because failure to adhere to this standard "would sanction the possibility of . . . coercion."  Trainor, 83 Haw. at 262, 925 P.2d at 830.  Hence, to the extent that the foregoing cases from other jurisdictions did not find criminal refusal sanctions inherently coercive, they are inconsistent with the right, under article I, section 7, to free, voluntary, and meaningful decision-making when waiver of constitutional rights is solicited, and they are in derogation of such values embodied by Hawai'i law as respect for human dignity and the integrity of one's person.  See Kaluna, 55 Haw. at 366, 371 & n.7, 520 P.2d at 57, 60 & n.7; see also supra note 35.

consent exception under both the Fourth Amendment and article I, section 7, which requires a case-specific inquiry into the totality of the circumstances to evaluate voluntariness.  See Schneckloth, 412 U.S. at 227; State v. Russo, 67 Haw. 126, 137, 681 P.2d 553, 562 (1984); Ganal, 81 Hawai'i at 368, 917 P.2d at 380.  This case-specific analytical framework underlying consent means that mere compliance with the dictates of the implied consent statute does not necessarily, much less automatically, equate to a finding of actual, voluntary consent under HRS § 291E-11(b).  Williams, 771 S.E.2d at 377.  Beyond mere statutory compliance, it is clear that an approach that accounts for the totality of the circumstances is invariably required to determine the voluntariness and validity of consent.  Cf. State v. Wulff, 337 P.3d at 581 (Idaho 2014) (concluding that "irrevocable implied consent operat[ing] as a per se rule . . . cannot fit under the consent exception because it does not always analyze the voluntariness of that consent").

## V.    Conclusion

In this case, Won sought to suppress evidence recovered in a warrantless search.  The State has not contested that the search was warrantless, but argued, inter alia, that it was nonetheless consensual.  However, the State has not met its burden to demonstrate that Won's consent to be searched and the

waiver of his constitutional right to be free of warrantless searches was the product of his free and unconstrained choice.

Under article I, section 7 of the Hawai'i Constitution, where no "specifically established and well-delineated exception[]" is present, a warrantless search is per se unreasonable, and any results of that search must be excluded from evidence. Ganal, 81 Hawai'i at 368, 917 P.2d at 380. Here, because voluntary consent has not been demonstrated and no other exception to the warrant requirement is applicable, the result of Won's breath test, the product of the warrantless search, is not admissible into evidence.[48]

---

[48] Won additionally argued to the ICA and later to this Court that he should have been informed of his rights under Miranda before the Implied Consent Form was read to him, that he was denied his right to an attorney in violation of HRS § 803-9 and that the Implied Consent Form misinformed him of the sanctions for refusing to consent to a breath, blood, or urine test. In light of our disposition in this case, we do not address these arguments or that portion of the decision of the ICA addressing these arguments.

Based on the foregoing analysis, the district court erred in not suppressing the result of Won's breath test. The judgment on appeal of the ICA and the district court's amended judgment of conviction are vacated, and the case is remanded to the district court for further proceedings consistent with this opinion.[49]

Jonathan Burge                          /s/ Sabrina S. McKenna
for petitioner
                                        /s/ Richard W. Pollack
Brian R. Vincent
for respondent                          /s/ Michael D. Wilson

Robert T. Nakatsuji
for Amicus Curiae
Attorney General of
the State of Hawaiʻi

Donald J. Ramsell
for Amicus Curiae
National College for DUI Defense

Kevin O'Grady
for Amicus Curiae
Hawaii Association of Criminal
Defense Lawyers



---

[49]     "When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." Garcia, 96 Hawaiʻi at 211, 29 P.3d at 930. This is the first time that we announce the constitutional principle that the threat of criminal sanctions inherently precludes a finding of voluntariness in the context of the consent exception to the warrant requirement. As such, this decision applies only to this case and to all cases pending on direct appeal or not yet final at the time that this decision is rendered. By final, we mean those cases in which the judgment of conviction has been rendered and the availability of appeal and certiorari has elapsed. Id. at 214, 29 P.3d at 933.