**Electronically Filed
Supreme Court
SCWC-16-0000716
28-AUG-2020
08:02 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

TROY HOSAKA,
Petitioner/Defendant-Appellant.

SCWC-16-0000716

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000716; CR. NO. 16-1-0057)

AUGUST 28, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ.[1]

---

[1] Associate Justice Richard Pollack, who was a member of the court when the oral argument was held, retired from the bench on June 30, 2020.

1

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I. INTRODUCTION

In 2016, police arrested Troy Hosaka for Habitually Operating a Vehicle Under the Influence of Intoxicants (Habitual OVUII). After his arrest, a Honolulu Police Department (HPD) officer read Hosaka the Department's implied consent form (HPD-396K) advising him of his right to refuse testing and explaining that Hosaka "may [] be subject to the procedures and sanctions under [Hawai'i Revised Statutes (HRS)] chapter 291E," if he refused. Hosaka signed and initialed the form, electing to take a breath test. Now, Hosaka seeks to suppress the breath test results, arguing that his consent was not knowing, intelligent and voluntary because the form did not comply with the implied consent statutory scheme governed by HRS Chapter 291E and is inaccurate as a result. We disagree.

We conclude that HPD's implied consent form complied with HRS Chapter 291E and was accurate. Moreover, even if the form had been inaccurate, non-compliance with the implied consent statutory scheme does not automatically mandate suppression — suppression is only warranted where an arrestee did not validly consent to chemical testing. While an inaccuracy in an implied consent form is a relevant factor to consider, whether consent is knowing, intelligent and voluntary must be determined by looking to the totality of the

2

circumstances.  Consent can be invalid if the inaccurate information conveyed is reasonably likely to influence an arrestee's consent, in which case the consent is not knowing or intelligent; or it can be invalid because it was coerced, in which case the consent is not voluntary.  In both situations, the question is whether the consent was valid, not whether the form complied with every technical requirement in the implied consent statutory scheme.  Here, because the totality of the circumstances show that Hosaka validly consented to a breath test, the breath test results are admissible.

## II.  BACKGROUND

By driving on a public road in the State of Hawai'i, drivers are deemed to have consented to a blood, breath, or urine test ("chemical test") to determine the level of intoxicants in their system if they are suspected of driving under the influence.  HRS § 291E-11(a) (2007).  When requesting a driver take a chemical test, a law enforcement officer must inform the driver that they have the right to refuse testing. HRS § 291E-11(b)(2).  If the driver chooses to refuse, they must be informed of the administrative sanctions that could be imposed as a result — namely, suspension of their license and privilege to drive — and given an opportunity to reconsider their decision.  HRS § 291E-15 (Supp. 2016).  If, after that second advisement, the driver persists in refusing, their

driver's license may be suspended after a hearing. HRS § 291E-41 (Supp. 2012).

**A.    Factual Background**

In January 2016, police pulled over and arrested Hosaka for Habitual OVUII. Hosaka has not contested that police had probable cause to arrest him on suspicion of driving under the influence of intoxicants.

While Hosaka was in custody, HPD Officer Jared Spiker read Hosaka, verbatim, HPD's implied consent form (HPD-396K) entitled "USE OF INTOXICANTS WHILE OPERATING A VEHICLE — IMPLIED CONSENT FOR TESTING" ("implied consent form" or "form"). The form stated in relevant part:

> USE OF INTOXICANTS WHILE OPERATING A VEHICLE
> IMPLIED CONSENT FOR TESTING[2]
>
> DATE OF ARREST: *1-11-16*    REPORT NO.: *16-015999*
>
> ARRESTEE'S[] NAME: *Troy Hosaka*
>
> I, *Jared Spiker*   , a police officer, swear that the following statements were read to the arrestee[]. **Pursuant to chapter 291E, Hawaiʻi Revised Statutes (HRS), Use of Intoxicants While Operating a Vehicle, you are being informed of the following:**
>
> 1. *TH* Any person who operates a vehicle upon a public way, street, road, or highway or on or in the waters of the State shall be deemed to have given consent to a test or tests for the purpose of determining alcohol concentration or drug content of the person[']s breath, blood, or urine as applicable.
>
> 2. *TH* You are not entitled to an attorney before you submit to any test[] or tests to determine your alcohol and/or drug content.
>
> 3. *TH* You may refuse to submit to a breath or blood

---

2    Italicized text indicates where the form was filled out by hand.

4

test, or both for the purpose of determining alcohol concentration and/or blood or urine test, or both for the purpose of determining drug content. If you do refuse, then none shall be given, except as provided in section 291E-21.[3] However, **if you refuse to submit to a breath, blood, or urine test, you may be subject to up to the sanctions of 291E-65**[4] **if you are under 21 years of age at the time of the offense. In addition, you may also be subject to the procedures and sanctions under chapter 291E, part III.**

ALCOHOL CONCENTRATION
*TH* AGREED TO TAKE A BREATH TEST AND REFUSED THE BLOOD TEST

. . . .

I, THE ARRESTEE/RESPONDENT, ACKNOWLEDGE THAT I MADE THE CHOICE(S) INDICATED ABOVE AND WAS INFORMED OF THE INFORMATION IN THIS REPORT.

ARRESTEE'S[] SIGNATURE: *Troy Hosaka* [Date]: *1-12-16*
SIGNED: *Jared Spiker* [ID]: *103267* [Date]: *1-12-16*

(Emphasis added.)

Hosaka initialed each of the form's three advisement paragraphs, initialed that he "agreed to take a breath test and refused the blood test," and signed the form at the bottom to "acknowledge that [he] made the choice[] indicated above and was informed of the information in [the form]." After completing the form, Hosaka took the breath test, which showed that his blood alcohol content was .134 percent — well over the legal

---

<sup>3</sup> HRS § 291E-21(a) (2007) permits a law enforcement officer to obtain a breath, blood, or urine sample from any driver involved in a collision causing injury or death to any person.

<sup>4</sup> HRS § 291E-65 (Supp. 2016) governs administrative sanctions for a refusal by a person under twenty-one arrested under HRS § 291E-64 (2007) (operating a vehicle after consuming a measurable amount of alcohol). Sanctioning under this section would not apply to Hosaka, since Hosaka was forty-two at the time of his arrest.

limit.  The State of Hawai'i charged Hosaka with Habitual OVUII, in violation of HRS § 291E-61.5 (2007 & Supp. 2015),[5] in the Circuit Court of the First Circuit (circuit court).[6]

## B.    Circuit Court's Suppression of Hosaka's Breath Test Results

Before trial, Hosaka filed a motion to suppress his breath test results, arguing that the test constituted an unreasonable search in violation of the United States and Hawai'i Constitutions.  He argued that his purported consent was coerced, and thus invalid, because the implied consent form advised him, "if you refuse to submit to a breath, blood, or urine test . . . you may [] be subject to the procedures and sanctions under chapter 291E, part III."  According to Hosaka, by informing him that he may be subject to sanctions if he were to refuse testing, the form failed to adequately inform him of his right to withdraw his consent and did not follow statutorily required procedures.  Thus, the breath test violated his fourth

---

[5]    HRS § 291E-61.5 provides in relevant part:

   (a)    A person commits the offense of habitually
          operating a vehicle under the influence of an
          intoxicant if:
          (1)    The person is a habitual operator of a
                 vehicle while under the influence of an
                 intoxicant; and
          (2)    The person operates or assumes actual
                 physical control of a vehicle:
                 . . . .
                 (C)    With .08 or more grams of alcohol
                        per two hundred ten liters of
                        breath[.]

[6]    The Honorable Glenn J. Kim presided.

amendment right to be free from unreasonable searches and seizures, and the results of the test needed to be suppressed.

The circuit court agreed with Hosaka, concluding that HRS §§ 291E-11 and 291E-15, when read in pari materia, required "an arrested person [] first [be] given a completely unencumbered choice to refuse to submit" to testing. Accordingly, police could not inform Hosaka that any sanctions could result from a refusal until after he made the initial choice to refuse. Because the implied consent form advised Hosaka that sanctions "may" result, the circuit court found that his consent was coerced and suppressed the breath test results.

C.   ICA Proceedings

The State appealed the suppression of Hosaka's breath test results to the Intermediate Court of Appeals (ICA), arguing that the form complied with HRS Chapter 291E and that the chapter did not require an OVUII arrestee to have an "unencumbered choice" to refuse a chemical test.

The ICA agreed with the State that suppression was not warranted, vacating the circuit court's order and remanding the case for further proceedings. However, the ICA agreed with the circuit court that HPD's implied consent form did not comply with HRS Chapter 291E's mandated procedures because the chapter required that an OVUII arrestee have an initial opportunity to refuse to submit to testing prior to being informed of possible

7

sanctions.

Nevertheless, the ICA concluded that suppression of Hosaka's breath test was not the proper remedy for non-compliance with HRS Chapter 291E procedures because HRS § 291E-15 barred the imposition of sanctions only where the arrestee was never informed of potential sanctions at any point during the advisal. Here, because the form informed Hosaka of the possible sanctions for refusing and Hosaka was given the opportunity to refuse testing with those sanctions in mind, the ICA concluded that the form's statement that Hosaka "may" have been subject to sanctions was accurate and therefore that the results need not be suppressed. Further, the ICA held that that the circuit court "erred in concluding that burdening an arrestee's election to refuse to submit to testing with any significant sanctions renders the arrestee's consent invalid."

Hosaka timely filed an application for writ of certiorari.

### III.  STANDARDS OF REVIEW

#### A.  Statutory Interpretation

The interpretation of a statute is a question of law that this court reviews de novo. State v. Arceo, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996).

> When construing a statute, our foremost obligation is
> to ascertain and give effect to the intention of the
> legislature, which is to be obtained primarily from
> the language contained in the statute itself. And we

8

> must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

State v. Ruggiero, 114 Hawai'i 227, 231, 160 P.3d 703, 707 (2007) (quoting Gray v. Admin. Dir. of the Court, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997)).

**B.    Motion to Suppress**

We review a circuit court's findings of fact on a motion to suppress under the clearly erroneous standard. State v. Alvarez, 138 Hawai'i 173, 181, 378 P.3d 889, 897 (2016). However, we review the court's conclusions of law de novo: "The question of whether the facts as found amount to legally adequate 'consent' is a question of constitutional law that a court answers by exercising its 'own independent constitutional judgment based on the facts of the case.'" State v. Won, 137 Hawai'i 330, 341, 372 P.3d 1065, 1076 (2015) (quoting State v. Trainor, 83 Hawai'i 250, 255, 925 P.2d 818, 823 (1996)).

**IV.    DISCUSSION**

The fourth amendment to the United States Constitution and its counterpart, article I, section 7 of the Hawai'i Constitution, guarantee the right of persons to be free from unreasonable searches. An intoxilyzer test is a search under these provisions; however, consent is a well-established exception to the requirement that a warrant be obtained before a search takes place. Won, 137 Hawai'i at 340, 372 P.3d at 1075.

As discussed above, the State contends that Hosaka consented to a breath test when advised of his rights under the implied consent statute.

"This court has stated unambiguously that for consent to be 'in fact, freely and voluntarily given,' the consent 'must be uncoerced,'" a determination that requires looking to the totality of the circumstances. Id. at 341, 372 P.3d at 1076 (quoting Nakamoto v. Fasi, 64 Haw. 17, 21, 635 P.2d 946, 951 (1981)).

Thus, to decide whether to suppress the results of a chemical test administered on the basis of an arrestee's consent, the court must evaluate the circumstances under which consent was given. While the accuracy of the implied consent form and its compliance with HRS Chapter 291E are relevant considerations, the central inquiry is not simply whether the form complies with the relevant statutes, but whether the circumstances indicate the arrestee's consent was knowing, intelligent, and voluntary. See Won, 137 Hawai'i at 345, 372 P.3d at 1080 ("[I]n order to legitimize submission to a warrantless BAC test under the consent exception, . . . it must be concluded that, under the totality of the circumstances, consent was in fact freely and voluntarily given.").

## A. The Implied Consent Form Complied with HRS Chapter 291E

Hosaka argues that his consent was coerced because of

defects in HPD's implied consent form. Accordingly, we first consider whether the form was accurate and in compliance with the implied consent statutory scheme (HRS Chapter 291E). We conclude that it was.

1. **HRS Chapter 291E establishes a two-step procedure for advising OVUII arrestees of their right to refuse chemical testing**

First, we agree with the circuit court and the ICA that HRS Chapter 291E's provisions, when read in pari materia, establish a two-step procedure for advising arrestees of their right to refuse chemical testing. See State v. Kamana'o, 118 Hawai'i 210, 218, 188 P.3d 724, 732 (2008) ("[L]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." (quoting Barnett v. State, 91 Hawai'i 20, 31, 979 P.2d 1046, 1057 (1999))).

HRS § 291E-11 provides in relevant part:

(a) Any person who operates a vehicle upon a public way, street, road, or highway . . . of the State shall be deemed to have given consent, subject to this part, to a test or tests approved by the director of health of the person's breath, blood, or urine for the purpose of determining alcohol concentration . . . of the person's breath, blood, or urine, as applicable.

(b) The test or tests shall be administered at the request of a law enforcement officer having probable cause to believe the person operating a vehicle upon a public way, street, road, or highway . . . of the State is under the influence of an intoxicant or is under the age of twenty-one and has consumed a measurable amount of alcohol, only after:

> (1)    A lawful arrest; and
>
> (2)    <u>The person has been informed by a law enforcement officer that the person may refuse to submit to testing under this chapter</u>.

(Emphases added.)

While HRS § 291E-11, on its own, suggests that OVUII arrestees need only be provided with one opportunity to refuse, it is clear from other statutes within HRS Chapter 291E that an additional advisement must be afforded to OVUII arrestees who refuse to submit to testing.

At the time of Hosaka's offense, for instance, HRS § 291E-15 (Supp. 2011),[7] which governs the imposition of sanctions, required law enforcement officers to give arrestees a second opportunity to refuse after advising them of possible sanctions:

> If a person under arrest refuses to submit to a breath, blood, or urine test, none shall be given, except as provided in section 291E-21. Upon the law enforcement officer's determination that the person under arrest has refused to submit to a breath, blood, or urine test, if applicable, then a law enforcement officer shall:

---

[7]    At the time Hosaka was arrested, HRS § 291E-15 also required law enforcement to advise an arrestee of the possible criminal sanctions under HRS § 291E-68. However, in 2016, HRS § 291E-68 was repealed by the legislature in response to this court's decision in <u>Won</u>, 137 Hawai'i 330, 372 P.3d 1065 (holding that burdening a defendant's right to refuse to submit to BAC testing under the threat of criminal sanctions was inherently coercive). <u>See</u> 2016 Haw. Sess. Laws Act 17, § 2 at 21. At that time, the legislature also amended HRS § 291E-15 to remove its reference to HRS § 291E-68. <u>See id.</u> § 1 at 21. Because of these legislative amendments and because Hosaka was never advised of any possible criminal sanctions, it is not necessary to address HRS § 291E-68 as a requirement in the instant case. Therefore, our analysis applies to the current version of HRS § 291E-15 as well as the version in place at the time of Hosaka's arrest.

12

> (1)   Inform the person under arrest of the sanctions under section 291E-41 [or] 291E-65 . . . and
>
> (2)   Ask the person if the person still refuses to submit to a breath, blood, or urine test, thereby subjecting the person to the procedures and sanctions under part III or section 291E-65, as applicable[.]

(Emphasis added.)

HRS § 291E-65, which governs sanctions for persons under 21 arrested for operating a vehicle after consuming a measurable amount of alcohol, likewise requires an officer to ask if an arrestee "still" refuses after informing them of sanctions.[8]   Similarly, HRS § 291E-41, which establishes the

---

[8]    HRS § 291E-65 provides in relevant part:

> (a)   If a person under arrest for operating a vehicle after consuming a measurable amount of alcohol, pursuant to section 291E-64, refuses to submit to a breath or blood test, none shall be given, except as provided in section 291E-21, but the arresting law enforcement officer, as soon as practicable, shall submit an affidavit to a district judge of the circuit in which the arrest was made, stating:
>
> (1)   That at the time of the arrest, the arresting officer had probable cause to believe the arrested person was under the age of twenty-one and had been operating a vehicle upon a public way, street, road, or highway or on or in the waters of the State with a measurable amount of alcohol;
>
> (2)   That the arrested person was informed that the person may refuse to submit to a breath or blood test, in compliance with section 291E-11;
>
> (3)   That the person had refused to submit to a breath or blood test;
>
> (4)   That the arrested person was:
>
> > (A)   Informed of the sanctions of this
> > (continued . . .)

duration of an administrative revocation of a driver's license for a refusal, requires that the arrestee refused, was advised of sanctions, and then asked if they "still refuse[d]":

> (c)   If a respondent has refused to be tested after being informed:
>
> (1)   That the person may refuse to submit to testing in compliance with section 291E-11; and
>
> (2)   Of the sanctions of this part and then asked if the person still refuses to submit to a breath, blood, or urine test, in compliance with the requirements of section 291E-15,
>
> the revocation imposed . . . shall be for a period of two years, three years, four years, or ten years, respectively [depending on the number of prior alcohol-related law enforcement contacts].

(Emphasis added.)

These statutes, when read together, demonstrate that before sanctions for refusal can be imposed, law enforcement must follow a two-step procedure: first, an OVUII arrestee must be given an opportunity to refuse to submit to testing; second, if the arrestee refuses, the arrestee must then be informed of the specific sanctions that could result and asked whether they still refuse testing.

The legislative history of HRS § 291E-15 also supports

---

> section; and then
>
> (B)   Asked if the person still refuses to submit to a breath or blood test, in compliance with the requirements of section 291E-15; and
>
> (5)   That the arrested person continued to refuse to submit to a breath or blood test.

(Emphasis added.)

this interpretation of the implied consent statutory scheme. See H.B. 3257, H.D. 1, S.D. 2, 23rd Leg., Reg. Sess. (2006).[9] For example, the House Committee on Transportation explained that the purpose of amending the implied consent statutory scheme was to streamline the implied consent process by only requiring officers to advise arrestees of the sanctions that could be imposed if the arrestee had already refused testing:

> [P]olice officers are [] required to read an inordinate amount of information to a suspect of DUII. This measure is an attempt to simplify [the implied consent] process while protecting the rights of the accused by clarifying that information on the consequences of refusing to submit to a blood, breath, or urine test only need to be read to an individual if the individual refuses to submit to such a test. Your Committee believes that this bill will support law enforcement and increase traffic safety.

H. Stand. Comm. Rep. No. 310-06, in 2006 House Journal, at 1218.

The Senate Committee on Judiciary and Hawaiian Affairs similarly explained that the purpose of the bill was to "considerably reduce the amount of time spent by the police in processing persons arrested for [OVUII]" by requiring that police "inform a person arrested . . . of the sanctions for refusal to submit to [a] breath, blood, or urine test only if [a] person withdraws [their implied] consent to testing[.]" S. Stand. Comm. Rep. No. 3303, in 2006 Senate Journal, at 1587 (emphasis added).

---

[9] H.B. 3257 was introduced by the legislature in 2006 and eventually was enacted into law as Act 64. See 2006 Haw. Sess. Laws Act 64, at 96-101.

15

Accordingly, we hold that under HRS Chapter 291E, an OVUII arrestee who initially refuses to submit to chemical testing must be given a second opportunity to refuse after being advised of the possible sanctions.

2. **The HPD's implied consent form complied with HRS Chapter 291E**

However, the fact that officers must follow a two-step procedure before sanctions can be imposed does not mean that the form in this case violated HRS Chapter 291E: Hosaka did not initially refuse chemical testing, and so HRS § 291E-15, which establishes the two-step procedure discussed above, does not apply to Hosaka's case. See HRS § 291E-15 ("Upon the law enforcement officer's determination that the person under arrest has refused to submit to a breath, blood, or urine test . . . ."). The requirements of HRS § 291E-15 are only triggered if the arrestee initially refuses; they do not apply to arrestees who, like Hosaka, choose not to withdraw their consent to chemical testing when first asked.

Most importantly, however, the two-step procedure does not require that an arrestee's initial refusal be "completely unencumbered," as the circuit court believed. HRS Chapter 291E permits law enforcement to tell arrestees that they "may" be subject to sanctions when giving the first implied consent advisal. The plain language of HRS § 291E-11 provides that a

test can be administered only after (1) a lawful arrest, and (2) an advisement that the arrestee has the right to refuse.  HRS § 291E-11(b).  It does not prohibit a law enforcement officer from telling an arrestee, as part of that first advisement, that sanctions "may" be imposed for a refusal.  Similarly, even if HRS § 291E-15 applied to Hosaka, the statute does not prohibit officers from advising arrestees of possible sanctions when they first ask an arrestee to submit to a chemical test and then later providing a more specific explanation of the potential sanctions if an arrestee refuses.[10]  Accordingly, we conclude that the implied consent form complied with HRS Chapter 291E.

## B.  Hosaka Voluntarily Consented to a Breath Test Under the Totality of the Circumstances

Having determined that the implied consent form did not violate statutory mandates, we turn to Hosaka's remaining arguments that his consent was not knowing, intelligent, and voluntary because the form contained inaccurate and misleading information under Wilson and was inherently coercive under Won.

---

[10]    We disagree with the ICA that sanctions could have been imposed under HRS § 291E-15 based solely on the implied consent form used to advise Hosaka initially.  As discussed above, HRS Chapter 291E requires that an arrestee be given two opportunities to consent to chemical testing, and HRS § 291E-15 only applies if an arrestee initially refuses testing.  After that first refusal, HRS § 291E-15(1) requires that a law enforcement officer "[i]nform the person under arrest of the sanctions under section 291E-41 [or] 291E-65[.]"  Thus, HRS § 291E-15 requires an arrestee be informed of the sanctions which could apply — not simply that unspecified sanctions may exist.  As Form HPD-396K informed an arrestee only that sanctions "may" result and did not explain what the potential sanctions were, law enforcement would have to conduct a more detailed advisement in compliance with HRS § 291E-15(2) before sanctions could be imposed.

1.   **Wilson does not support suppression of chemical test results solely due to an inaccurate or incomplete implied consent form**

The circuit court concluded that the implied consent form was inaccurate and therefore that this court's decision in Wilson, 92 Hawai'i 45, 987 P.2d 268, required the suppression of Hosaka's breath test results. According to the circuit court, because the form in this case did not follow the required two-step procedure set forth in HRS § 291E-15, sanctions could never have been imposed, so it was inaccurate for the form to advise Hosaka that they "may" have been. We disagree.

First, we conclude that the implied consent form was accurate. It advised Hosaka that if he refused chemical testing, he "may [] be subject to the procedures and sanctions under chapter 291E, part III." That was a true statement: At the time Hosaka was advised, sanctions could have been imposed if he refused and continued to refuse after being advised of the possible sanctions, as required by HRS § 291E-15. Although the imposition of sanctions required additional steps, the possibility of sanctions for a refusal existed even at the beginning of Hosaka's implied consent advisal. HPD's form accurately explains this possibility by telling arrestees that if they refused, they "may" be subject to the procedures and sanctions in the implied consent statute.

However, even if we determined that HPD's implied

consent form was potentially misleading, that fact alone does not warrant suppression. We take this opportunity to reiterate that the constitution requires knowing, intelligent, and voluntary consent — not compliance with every technical requirement in the implied consent statutory scheme. See Won, 137 Hawai'i at 354, 372 P.3d at 1089 ("[T]he question of whether the implied consent statute is adhered to is separate and distinct from the constitutional inquiry into whether there is actual consent to BAC testing under HRS § 291E-11(b)."). Thus, the operative question is whether any defects in the form were likely to influence an arrestee's decision whether to consent.

In Wilson, the implied consent advisement informed arrestees, "[I]f you refuse to take any tests . . . your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take the test and failed it[.]" 92 Hawai'i at 47, 987 P.2d at 270. That advisement was wholly incorrect — if a driver failed to take a test, their driving privileges could be revoked for "anywhere from three months to one year." Id. We found that the nature of the misrepresentation — that Wilson's driver's license would be suspended for less time if he took a test and failed, than if he refused a test — "was relevant to [the defendant's] decision whether to agree to or refuse the blood alcohol test." Id. at 51, 987 P.2d at 274. As a result of the form's

19

misrepresentation, we held that suppression was necessary.

Wilson stands for the fundamental principle that police officers may not induce an arrestee into not withdrawing their implied consent by giving an inaccurate or misleading implied consent advisement. Thus, we held that "where a change in wording of the implied consent warnings operates to convey a different meaning than that specified in the statute, the driver cannot be held to have made a knowing and intelligent decision whether to submit to an evidentiary alcohol test." Wilson, 92 Hawai'i at 50, 987 P.2d at 273.

We recognize that in Wilson we stated, "the arresting officer's violation of [the implied consent statute's] consent requirement precludes admissibility of Wilson's blood test results in his related criminal DUI proceeding." Id. at 53-54, 987 P.2d at 276-77. However, this does not mean that any imperfection in the implied consent form mandates suppression of the chemical test results. The implied consent form in Wilson omitted the maximum possible administrative sanction to create the misleading and inaccurate impression that the penalty for refusing of a chemical test would be worse than submitting to a test and failing. This misrepresentation was of the type reasonably likely to influence an arrestee into consenting to a chemical test; therefore, the arrestee's consent was not

knowing, intelligent, and voluntary.[11]  Id. at 47, 987 P.2d at 270; cf. State v. Matsumoto, 145 Hawai'i 313, 324, 452 P.3d 310, 321 (2019) ("[D]eliberate falsehoods extrinsic to the facts of the alleged offense, which are of a type reasonably likely to . . . influence an accused to make a confession regardless of guilt, [] will be regarded as coercive per se." (quoting State v. Kelekolio, 74 Haw. 479, 512-13, 849 P.2d 58, 73-74 (1993)) (emphases added)).  Wilson involved an inaccurate advisement informing an arrestee that the length of a driver's license suspension would be three months instead of one year, an inaccuracy we characterized as "substantive" and "substantial," and which was reasonably likely to influence an arrestee's decision.  92 Hawai'i at 53 n.11, 987 P.2d at 276 n.11. Accordingly, Wilson should not be read to invalidate consent due solely to minor defects in the implied consent advisory that are unlikely to do so.

In this case, the implied consent form accurately informed Hosaka of the possible sanctions and did not omit any important information that could have influenced his decision whether to withdraw his implied consent.  Even if the statement that sanctions "may" be imposed is considered misleading because intervening steps would have to take place before that could

---

[11]    We emphasize that the constitutional infirmity in Wilson was not the incomplete advisement per se, but the nature of the incompleteness — the implied consent form omitted a substantive fact that rendered it misleading.

21

happen, any inaccuracy was slight and unlikely to affect an arrestee's decision whether to consent to a chemical test. Accordingly, suppression is not warranted under Wilson.

### 2. HPD's implied consent form was not coercive under Won

Hosaka further argues that under this court's decision in Won, 137 Hawai'i 330, 372 P.3d 1065, the mere mention of sanctions in the implied consent form was coercive and therefore mandates suppression of the breath test results. The circuit court agreed, concluding that even though Won involved criminal sanctions for a refusal, "under the reasoning of Won, burdening an arrestee's election to refuse with any significant sanctions cannot help but render any subsequent purported consent legally insufficient and therefore null and void." We disagree with the circuit court's interpretation of Won.

In Won, the defendant consented to a chemical test after being advised that if he refused chemical testing he would "be subject to up to thirty days imprisonment and/or fine up to $1,000 or the sanctions of 291E-65, if applicable." Id. at 335, 372 P.3d at 1070 (emphasis omitted). We held that "[w]here arrest, conviction, and imprisonment are threatened if consent to search is not given, the threat infringes upon and oppresses the unfettered will and free choice of the person to whom it is made, whether by calculation or effect." Id. at 346, 372 P.3d at 1081. Notably, we concluded that in addition to the sheer

22

threat of criminal punishment, the advisement was especially coercive because "the choice presented by the Implied Consent Form forces a defendant to elect between fundamental rights guaranteed by the Hawai'i Constitution," and the duration of possible imprisonment for a refusal was significantly higher than the possible imprisonment for a first OVUII offense. Id. at 347-48, 372 P.3d at 1082-83 (emphasis omitted).

However, we also explicitly distinguished administrative sanctions from the threat of criminal prosecution and imprisonment: "It bears repeating here that this opinion does not concern the civil administrative penalties attendant to a driver's refusal of BAC testing. See HRS § 291E-41(d) (Supp. [2012]); see generally HRS Chapter 291E, Part III. Those types of sanctions are not affected in any way by our decision." Id. at 349 n.34, 372 P.3d at 1084 n.34. Given Won's repeated references to the coercive nature of the criminal sanctions at issue, the circuit court erred in concluding that Won prohibited "any significant sanction burdening a defendant's choice to refuse."

Here, the implied consent form that Hosaka signed can be distinguished from the form in Won: it did not threaten Hosaka with arrest or imprisonment for refusing a chemical test; it did not require him to choose between constitutional rights; and it did not advise him, as the forms in both Won and Wilson

23

did, that the punishment for refusal would be worse than the punishment for failing a chemical test.  Even if a threat of administrative sanctions could be coercive under some circumstances, the circumstances here do not rise to that level. Moreover, there are no other factors (and certainly no other factual findings regarding such factors) that could have been coercive or that suggest Hosaka was, in fact, coerced.  Thus, as the totality of the circumstances demonstrates that Hosaka voluntarily consented to the breath test, the results of that test are admissible.

## V.  CONCLUSION

We hold that the implied consent form in this case complied with HRS Chapter 291E and was not inaccurate or misleading.  Further, we clarify that not all inaccuracies in implied consent forms require suppression of chemical testing results: only inaccuracies that are reasonably likely to influence an arrestee to consent will require suppression. Similarly, informing an arrestee of possible civil sanctions does not make an advisement automatically coercive.  As the implied consent form here was not inaccurate or coercive, and the circuit court did not find that any of the other circumstances of Hosaka's advisal were coercive, Hosaka knowingly, intelligently, and voluntarily consented to the breath test, and the results of the breath test are admissible.

Accordingly, the ICA's judgment on appeal filed June 18, 2019,

is affirmed, and this case is remanded to the circuit court for

further proceedings consistent with this opinion.

| | |
|---|---|
| Howard K. K. Luke<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Brian R. Vincent<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |

