**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000103
30-JAN-2025
07:53 AM
Dkt. 56 SO**

NO. CAAP-24-0000103
(Consolidated with NO. CAAP-24-0000290)

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellant, v.
EDWIN C. JOHNSON, Defendant-Appellee.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1CPC-22-0001433)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and Guidry, JJ.)

Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the January 24, 2024 Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Suppress Blood Measurement [(**Motion to Suppress**)] (**Order Granting Motion to Suppress**) and the March 13, 2024 Proposed [sic] Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Suppress Evidence and Statements, Granting Defendant's Motion to Dismiss for Violation of Due Process or in the Alternative to Allow Defendant to Present a Mistake of Fact/Law Defense [(**Motion to Dismiss**)] (**Order Granting Motion to Dismiss**), entered by the Circuit Court of the First Circuit (**Circuit Court**).[1]

---

[1]     The Honorable Paul B.K. Wong presided.

The State raises two points of error on appeal, contending that the Circuit Court: (1) clearly erred in suppressing Defendant-Appellee Edwin C. Johnson's (**Johnson's**) blood alcohol content (**BAC**) test results; and (2) erred in dismissing the charge against Johnson in Count I, Habitually Operating a Vehicle Under the Influence of an Intoxicant (**HOVUII**) in violation of Hawaii Revised Statutes (**HRS**) § 291E-61.5(a)(1) and (a)(2)(A) (Supp. 2022).[2]

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve the State's points of error as follows:

(1) The Circuit Court granted the Motion to Suppress after finding and concluding that Honolulu Police Department Officer Dallas Pauʻu's (**Officer Pauʻu's**) supplementation of the information on the (accurate) Implied Consent Form violated Johnson's constitutional rights. The State argues that the Circuit Court erred in suppressing the blood test results because

---

[2] HRS § 291E-61.5 provides in relevant part:

**§ 291E-61.5 Habitually operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of habitually operating a vehicle under the influence of an intoxicant if:

(1) The person is a habitual operator of a vehicle while under the influence of an intoxicant; and

(2) The person operates or assumes actual physical control of a vehicle:

(A) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

Officer Pauʻu's answer to Johnson's question was not coercive and did not misrepresent the law.

Under the Fourth Amendment of the United States Constitution and article I, section 7 of the Hawaiʻi Constitution, a person has the right to be free from unreasonable searches. A BAC test is a search under these provisions; however, consent is a well-established exception to the requirement that a warrant be obtained before a search takes place. State v. Hosaka, 148 Hawaiʻi 252, 258, 472 P.3d 19, 25 (2020) (citing State v. Yong Shik Won, 137 Hawaiʻi 330, 340, 372 P.3d 1065, 1075 (2015)). The Hawaiʻi Supreme Court explained:

> [T]o decide whether to suppress the results of a chemical test administered on the basis of an arrestee's consent, the court must evaluate the circumstances under which consent was given. While the accuracy of the implied consent form and its compliance with HRS Chapter 291E are relevant considerations, the central inquiry is not simply whether the form complies with the relevant statutes, but whether the circumstances indicate the arrestee's consent was knowing, intelligent, and voluntary.

Id. (citing Won, 137 Hawaiʻi at 345, 372 P.3d at 1080).

An arrestee's consent to take a chemical test is not made knowingly, intelligently, and voluntarily when the arresting officer induces this consent with an inaccurate and misleading implied consent advisement. State v. Wilson, 92 Hawaiʻi 45, 51, 987 P.2d 268, 274 (1999). In order to invalidate the arrestee's consent, the misrepresentation must be of the type reasonably likely to influence an arrestee into consenting to a chemical test. Hosaka, 148 Hawaiʻi at 262, 472 P.3d at 29 (discussing Wilson, 92 Hawaiʻi at 47, 987 P.2d at 270). An arrestee's consent is not invalidated due solely to minor defects in the

implied consent advisory that are unlikely to influence the arrestee's decision.  Id.

Here, Officer Pauʻu misstated the law when he told Johnson, "If you test under, you will not be criminally charged." HRS § 291E-61(a) (2020) provides in relevant part:

> **§ 291E-61  Operating a vehicle under the influence of an intoxicant.**  (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> > (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
> >
> > (2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;
> >
> > (3) With .08 or more grams of alcohol per two hundred ten liters of breath; or
> >
> > (4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

A person need not exceed a specific BAC measurement to be charged with and convicted of Operating a Vehicle under the Influence of an Intoxicant (**OVUII**).  Under HRS § 291E-61(a), a person may be convicted of OVUII for operating or assuming actual physical control of a vehicle, *inter alia*, "[w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]"  HRS § 291E-61(a)(1). Accordingly, a person may still be convicted of OVUII even if they "test under" the BAC measurement specified in HRS § 291E-61(a)(4).  Therefore, Officer Pauʻu's statement to Johnson that he would not be criminally charged if he tested under the legal limit was an inaccurate and misleading statement.  This

4

inaccurate and misleading statement was of the type reasonably likely to influence Johnson into consenting to the blood test because, as Johnson himself testified, it created "a possibility that [he] won't be criminally charged," and it was "a way out." See Hosaka, 148 Hawaiʻi at 262, 472 P.3d at 29; Wilson, 92 Hawaiʻi at 47, 987 P.2d at 270.

The State argues that Officer Pauʻu's statement did not invalidate Johnson's consent because it amounted to a promise regarding the exercise of his discretion, and there was no evidence that Officer Pauʻu intended to renege on this promise. However, Johnson testified that he was surprised by Officer Pauʻu's statement because he did not "know the law to [that] extent." The Circuit Court found that Johnson was contemplating his decision to participate in the BAC test when the officer informed him that if he tested under the statutory limit, he would not be charged. Johnson's testimony indicates that he consented to the BAC test not because he understood Officer Pauʻu's statement to be a promise, but rather because he understood it to be a representation of the law.

Therefore, we conclude that Johnson's consent to the BAC test was not made knowingly, intelligently, and voluntarily, and the Circuit Court did not clearly err in concluding that the supplementation of the otherwise accurate advisement violated Johnson's rights.

(2) The State argues that by dismissing the HOVUII charge against Johnson, the Circuit Court was apparently concluding that a mistake of law defense was established as a

matter of law because the district courts in Johnson's two prior cases informed him of future penalties if he was convicted again, without telling him the law could change. The State argues that the Circuit Court improperly encroached on the province of the jury to decide whether the State has disproved any mistake of law defense. The State further argues that Johnson cannot make the requisite showing that he was subjectively ignorant that a third OVUII violation was a felony without himself testifying, there was no showing that Johnson would even be entitled to a mistake of law instruction, and even if Johnson had made the requisite showing, the determination must be made by the trier of fact, after trial, not at a pretrial hearing by a judge.

However, at the February 5, 2024 hearing on the Motion to Dismiss, the Circuit Court expressly stated that it wanted to leave aside the issue of the mistake of law defense because "we don't figure out what the instructions are going to be really until evidence is completed." The Circuit Court subsequently concluded that, although there is no requirement that courts colloquy or otherwise advise defendants who are entering a plea to the possible consequences of subsequent convictions for the same criminal conduct, the district courts did so here. The Circuit Court further concluded, however, that Johnson's situation was a matter of fundamental fairness because the district courts twice placed Johnson on notice that if he was charged with OVUII three times within five years, he would be subject to a petty misdemeanor charge. After, *inter alia*, weighing the State's interest in punishing criminal conduct with

the fundamental fairness to Johnson, the fundamental fairness outweighed the State's interest in prosecuting Johnson for HOVUII.[3]  For these reasons, the Circuit Court dismissed the HOVUII charge with prejudice, but did not preclude the State from refiling an OVUII charge.

On appeal, the State does not argue error in, or otherwise address, the actual basis for the Circuit Court's ruling.[4]  Accordingly, the State waived any argument that the Circuit Court erred in its analysis of due process and fundamental fairness.  Therefore, we conclude that the State has not established that it is entitled to relief.

For these reasons, the Circuit Court's January 24, 2024 Order Granting Motion to Suppress and March 13, 2024 Order Granting Motion to Dismiss are affirmed.

DATED: Honolulu, Hawaiʻi, January 30, 2025.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellant.

Christopher M. Phillips,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge

---

[3]  Article VI, section I of the Hawaiʻi Constitution vests the courts with judicial power.  The inherent power of the court includes, *inter alia*, the power to administer justice.  State v. Moriwake, 65 Haw. 47, 55, 647 P.2d 705, 712 (1982) (citation omitted).  In exercising this inherent power, a trial court must balance "the interest of the state against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system."  Id. at 56, 647 P.2d at 712 (citation omitted).

[4]  Although the State states without elaboration that the Circuit Court erred in concluding that charging Johnson with HOVUII violated due process, the State neither makes a legal argument nor cites to any authority to support this assertion.